(152 App. Div. 506.)

## In re WHITTEN.

### WHITTEN v. GAYNOR, Mayor, et al. (two cases).

(Supreme Court, Appellate Division, Second Department.   September 10, 1912.)

1. LICENSES (§ 39*)—OPERATION OF MOVING PICTURE SHOWS WITHOUT LICENSE.

Where a license to operate a moving picture show is unnecessary, one may conduct his business without a license, and maintain actions for trespass, or perhaps in equity, against those interfering therewith.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. §§ 76–78; Dec. Dig. § 39.*]

2. CERTIORARI (§ 24*)—RULINGS ON APPLICATION FOR LICENSE TO CONDUCT BUSINESS.

Certiorari does not lie to review the action of city officials in granting or withholding a license to conduct a particular business, since their act is not a judicial one.

[Ed. Note.—For other cases, see Certiorari, Cent. Dig. § 37; Dec. Dig. § 24.*]

3. MANDAMUS (§ 181*)—PEREMPTORY WRIT—ANSWERING AFFIDAVITS—ADMISSIONS.

Where, in mandamus, issues of fact are raised by the answering affidavits, relator, insisting on a peremptory writ, concedes the truth of the affidavits.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 401–404, 406, 408–410, 417, 418; Dec. Dig. § 181.*]

4. APPEAL AND ERROR (§ 874*)—REVIEW—TEMPORARY INJUNCTION—MERITS OF CONTROVERSY.

The court, on appeal from an order denying a temporary injunction, will not determine the merits of the controversy involving a disputed question of fact, except in exceptional cases; and where a case could be tried on the merits as soon as an appeal from an order denying a temporary injunction could be heard, the court, on appeal, will not determine the merits.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3478, 3480, 3481, 3484, 3530–3540; Dec. Dig. § 874.*]

5. THEATERS AND SHOWS (§ 2*)—REGULATION OF MOVING PICTURE SHOWS—POLICE POWER.

Laws 1911, c. 756, providing for the construction of fireproof booths for apparatus for moving pictures, and for the approval of plans and specifications for the construction of booths of dimensions specified, is a valid exercise of the police power; and, though it prescribes minimum dimensions for booths and specifications for the construction thereof, an owner of a moving picture show may, in his judgment, increase the dimensions,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and discretion is given to city officials in determining whether booths are constructed so as to be safe.

[Ed. Note.—For other cases, see Theaters and Shows, Cent. Dig. § 2; Dec. Dig. § 2.*]

6. CONSTITUTIONAL LAW (§§ 70, 81*)—POLICE POWER—VALIDITY OF STATUTE.
Where a statute, enacted as an exercise of the police power, is not within the rule of necessity, in view of facts of which judicial notice may be taken, the statute falls; but otherwise it must stand, and the court will not substitute its own judgment, or the views of experts, for the judgment of the Legislature.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 129–132, 137, 148; Dec. Dig. §§ 70, 81.*]

Appeal from Special Term, New York County.

Certiorari and mandamus by Robert C. Whitten against William J. Gaynor, Mayor of the City of New York and another, and by Robert C. Whitten against same defendants and others. From orders denying a writ of certiorari, and application for a peremptory writ of mandamus, and an injunction pendente lite, Robert C. Whitten appeals. Affirmed.

See, also, 149 App. Div. 923, 133 N. Y. Supp. 1150.

Argued before HIRSCHBERG, BURR, THOMAS, WOODWARD, and RICH, JJ.

Tobias A. Keppler, of New York City, for appellant.

James D. Bell, of Brooklyn, for respondents.

BURR, J. On July 24, 1911, the Legislature passed an act (Laws of 1911, chapter 756) which amended the General Business Law. Its provisions are as follows:

"Sec. 209. Fireproof Booth for Cinematograph or Any Other Apparatus for Projecting Moving Pictures.—No cinematograph or any other apparatus for projecting moving pictures, which apparatus uses combustible films of more than ten inches in length, shall be set up for use or used in any building, place of public assemblage or entertainment, unless such apparatus for the projecting of moving pictures shall be inclosed therein in a booth or inclosure constructed of iron frame work covered or lined with asbestos board, or with some equally strong and fire-resisting material, and unless such booth shall have been constructed as provided in section two hundred and ten of this article and the certificate provided in section two hundred and eleven of this article shall have been issued to the owner or lessee of the premises wherein such booth is situated.

"Sec. 210. Construction of Booth; Approval of Plans and Specifications.—The booths provided for in section two hundred and nine of this article shall be constructed according to plans and specifications which shall have been first approved, in a city, by the mayor or chief executive officer of the city department having supervision of the erection of buildings in such city; in a village, by the president of such village; in a town outside the boundaries of a city or village, by the supervisor of such town. Provided, however, that no plans and specifications for the construction of such booths shall be approved by any public official unless the following requirements are substantially provided for in such plans and specifications:

"1. Dimensions.—Such booth shall be at least seven feet in height. If one machine is to be operated in such booth the floor space shall be not less than forty-eight square feet. If more than one machine is to be operated therein, an additional twenty-four square feet shall be provided for each such additional machine.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"2. General Specifications.—Such booth shall be constructed with a frame work of iron angles not less than one and one-quarter inches by one and one-quarter inches by three-sixteenths of an inch thick, the adjacent iron members being joined firmly with angle plates of iron. The iron members of the frame work shall be placed not more than four feet apart on the sides and not more than three feet apart on the front and back and top of such booth. The fire-resisting material provided for in section two hundred and nine of this article shall completely cover the sides, top and all joints of such booth. The sheets of such fire-resisting material shall be at least one-quarter of an inch in thickness and shall be securely attached to the iron frame work by means of iron bolts or rivets. The floor space occupied by the booth shall be covered with said fire-resisting material not less than three-eighths of an inch in thickness. There shall be provided for the booth a door not less than two feet wide and six feet high, consisting of an angle iron frame covered with sheets of said fire-resisting material one-quarter of an inch thick, and attached to the frame work of the booth by hinges, in such a manner that the door shall be kept closed at all times, when not used for ingress or egress.

"The operating windows, one for each machine to be operated therein and one for the operator thereof, shall be no larger than reasonably necessary, to secure the desired service, and shutters of said fire-resisting material shall be provided for each window. When the windows are open, the shutters shall be so suspended and arranged that they will automatically close the window openings, upon the operating of some suitable fusible or mechanical releasing device.

"Sec. 211. Inspection; Certificate.—After the construction of such booth shall have been completed, the public officer charged herein with the duty of passing upon the plans and specifications therefor shall within three days after receipt of notice in writing that such booth has been completed cause such booth to be inspected. If the provisions of sections two hundred and nine and two hundred and ten of this article have been complied with, and if, in the judgment of such public officer such booth is otherwise constructed in a manner so as to render safe the operation of apparatus for projecting moving pictures, such public officer shall issue to the owner or lessee of the premises wherein such booth is situated a certificate stating that the provisions of sections two hundred and nine and two hundred and ten of this article have been complied with.

"Sec. 212. Penalty for Violating This Article.—The violation of any of the provisions of this article shall constitute a misdemeanor. This act shall not apply to cities which have local laws or ordinances now in force which provide for fire-proof booths of any kind for moving picture machines or apparatus."

On October 2, 1909, Robert C. Whitten had fitted up certain premises situated at College Point, and within the boundaries of the city of New York, for the purpose of carrying on the business of a "moving picture show," and since then has there carried on the same. On the date named he obtained from the mayor of the city, through the bureau of licenses, a license for the period of one year, to expire on October 2, 1910. This license was renewed for the subsequent year. On November 2, 1911, he tendered to the chief of the bureau of licenses a sum equal to the renewal of the license fee for a period of one year, which was accepted, and requested such renewal. A temporary renewal was given to him, to expire December 4, 1911, which was thereafter extended to January 19, 1912, at which time his application for a renewal license for the full year, to expire October 2, 1912, was refused, upon the ground that the inclosure or booth in which the moving pic-

ture machine was operated did not comply with the requirements of the act above referred to. It is conceded that it did not.

Thereupon the said Whitten instituted a series of actions or proceedings, intended to test his right to continue the operation of said machine in connection with his business, in each of which he has been unsuccessful. On February 24, 1912, he applied to the Special Term of this court for a common-law writ of certiorari against the mayor and the chief of the bureau of licenses of the city of New York, intended to review the proceedings relating to his application for the issuance of a license and their refusal to issue the same. On March 25th an order was entered denying the application for the writ, and from that order an appeal was taken.

On March 30th, he began an action in equity against the mayor, the police commissioner of the city of New York, the chief of the bureau of licenses, the inspector of police in College Point, and the police captain of the precinct in which the premises in question are situated, to enjoin them from interfering with the conduct of his business, or from trespassing upon the premises where he carried on the same; and in the same action he asked, as additional relief against the mayor and the chief of the bureau of licenses, that they be compelled to continue the license previously granted to him, and from time to time to issue to him new licenses. In this action he obtained a temporary injunction, with an order to show cause why the same should not be continued during the pendency thereof. On April 22d, the motion to continue the injunction was denied, and the temporary injunction was vacated. From that order an appeal was taken.

On April 29th, he obtained an order to show cause why a peremptory writ of mandamus should not issue to the mayor and the chief of the bureau of licenses, commanding them to permit him to conduct his moving picture show, and to accord to him all the rights, privileges, and benefits of "such license." On June 10th, this application was denied, and from the order then entered an appeal was also taken.

[1, 2] These three appeals were brought on for argument together. In the brief of the learned counsel for appellant, he contends that there is no provision, either of statute applicable to the city of New York, or municipal ordinance thereof, which requires the operator of a moving picture show to obtain a license therefor. This contention is inconsistent with the position taken by him, at least in the certiorari and mandamus proceedings, since each of these is based upon the necessity for a license and the improper conduct of the city officials in refusing to grant the same. If a license is unnecessary, the relator in these proceedings may abandon all efforts to obtain one, and conduct his business, and maintain actions for trespass, or perhaps in equity, against those interfering therewith. If a license is necessary, it is sufficient in the certiorari proceedings to say that the act of the city officials in granting or withholding a license, while it may to some extent involve the exercise of judgment, is not a judicial act, and therefore

not thus reviewable. Matter of Simons v. McGuire, 204 N. Y. 253, 97 N. E. 526; People ex rel. Schau v. McWilliams, 185 N. Y. 92, 77 N. E. 785; People ex rel. McNulty v. Maxwell, 123 App. Div. 591, 108 N. Y. Supp. 49; Matter of Armstrong v. Murphy, 65 App. Div. 126, 72 N. Y. Supp. 475.

[3] In the mandamus proceedings issues of fact are raised by the answering affidavits. When facts upon which the right to a writ of peremptory mandamus are controverted by answering affidavits, if relator insists upon the peremptory writ, he must be deemed to have conceded the truth of the statement contained in such affidavits. People ex rel. Corrigan v. Mayor, 149 N. Y. 215, 43 N. E. 554. In the notice of motion in this proceeding an alternative writ is asked for if a question of fact arises. This portion of the motion was apparently waived, for the order appealed from simply denies the application for a peremptory writ, and is silent upon the other question, and there is nothing for us to review upon this branch of the case.

[4] It is possible that the action in equity may be construed as one to compel the issuing of a license, if one is necessary, or, if it is not, to enjoin interference with the business of the plaintiff named therein, notwithstanding failure to obtain the same. Without determining whether such action will lie, it is sufficient to say that the questions involved in the determination made will not be reviewed upon an appeal from the order. Appellant in that action contends that the legislative act in question has no application to the city of New York, because said city "had local laws or ordinances now in force which provide for moving picture machines or apparatus." This is denied by the defendants, and presents a disputed question of fact. When such is the case, this court is committed to the policy of declining, upon appeals from orders granting or refusing temporary injunctions, to determine the merits of the controversy save in exceptional cases. Smith & Sons Carpet Co. v. Ball, 137 App. Div. 100, 122 N. Y. Supp. 187; Heim v. New York Stock Exchange, 138 App. Div. 96, 122 N. Y. Supp. 872. This is not such an exceptional case; for, accepting the statements in plaintiff's moving papers with regard thereto, the case could have been tried upon the merits at the June Special Term before, or at least as soon as, the appeal from the order was heard.

[5] Appellant further contends that the act is unconstitutional. The subject-matter of the legislation is the securing of the public safety and welfare. This is a proper subject in connection with which to exercise the police power of sovereignty. Freund on Police Power, § 8; People ex rel. Wineburgh Adv. Co. v. Murphy, 195 N. Y. 126, 88 N. E. 17, 21 L. R. A. (N. S.) 735. There is a substantial connection between the assumed purpose of the act and the end to be accomplished, and it cannot be said upon inspection that it is not adapted to that end.

[6] The plaintiff contends that it is not a wise exercise of legislative power, since compliance with certain of its provisions would tend to increase rather than diminish the public peril in con-

nection with the use of these appliances. But this cannot be stated as truth other than as matter of opinion, and "if there is any seri-ous doubt as to the danger or remedy, the Legislature has better facilities for resolving it than a court of justice, which must rely upon the testimony of parties in a particular case, which may be collusive, and in different cases may be conflicting." Freund on Police Power, § 144. If it can be said that the act is not within the rule of necessity, in view of facts of which judicial notice may be taken, then the act must fall; otherwise, it should stand (People v. Smith, 108 Mich. 527, 66 N. W. 382, 32 L. R. A. 853, 62 Am. St. Rep. 715), and the court will not substitute its own judgment or the views of experts for the judgment of the Legislature (Commonwealth v. Jacobson, 183 Mass. 242, 66 N. E. 719, 67 L. R. A. 935, affirmed 197 U. S. 11, 25 Sup. Ct. 358, 49 L. Ed. 643, 3 Ann. Cas. 765; Matter of Viemeister v. White, 179 N. Y. 235, 72 N. E. 97, 70 L. R. A. 796, 103 Am. St. Rep. 859, 1 Ann. Cas. 334).

While the act in question prescribes certain minimum dimensions for the booth, and certain specifications for the construction thereof, if, in the judgment of the plaintiff it is necessary, these dimensions may be increased, and considerable discretion is given to the city officials in determining whether the booth is otherwise constructed so as "to render safe the operation of apparatus for projecting moving pictures." We cannot say that the act is so unreasonable as to merit judicial condemnation.

The order denying motion for a writ of certiorari should be affirmed, with $10 costs and disbursements.

The order denying motion for an injunction pendente lite and vacating the temporary injunction should be affirmed, with $10 costs and disbursements.

The order denying the application for a peremptory writ of mandamus should also be affirmed, with $10 costs and disbursements. All concur.

---

(152 App. Div. 488.)

PEOPLE ex rel. NEW YORK CENT. & H. R. R. CO. v. HANKING et al., Assessors.

(Supreme Court, Appellate Division, Second Department. September 10, 1912.)

2. TAXATION (§ 391*) — ASSESSMENT — RAILROAD PROPERTY — TUNNELS AND GRADES.
     In determining the value of a railroad right of way for taxation, it will be assessed with relation to its value for railroad purposes; and though grading and a tunnel would not add anything to the value of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes