SILVERMAN v. GILCHRIST, City License Com'r.

(Circuit Court of Appeals, Second Circuit. July 10, 1919.)

No. 241.

THEATERS AND SHOWS ☞3—CITY CHARTER GIVEN POWER TO REVOKE LICENSE OF MOVING PICTURE SHOWS.

Greater New York Charter, § 641, as amended by Laws N. Y. 1914, c. 475, in connection with Code of Ordinances of New York City, c. 3, art. 2, vests in the commissioner of licenses full authority to grant and revoke licenses of moving picture theaters, and his action in revoking a license is not reviewable by the courts, except for failure to fairly and honestly exercise his discretion.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by Isaac Silverman against John F. Gilchrist, as Commissioner of the Department of Licenses, New York City. Decree for complainant, and defendant appeals. Reversed.

William P. Burr, Corp. Counsel, of New York City (William B. Carswell, of New York City, of counsel), for appellant.

Charles H. Griffiths, of New York City (Raymond H. Sarfaty, of New York City, of counsel), for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge. This is an appeal from the final decree of the District Court for the Southern District of New York enjoining the defendant, as commissioner of the department of licenses of the

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

city of New York, from revoking the license of any theater in this city on the ground that such theater is exhibiting or means to exhibit the photo play called "Fit to Win." The subject of the play is the great danger to the public of the spread of venereal diseases, results of which are displayed in the pictures. It is proved that the defendant has threatened to revoke the license of the Grand Opera House in Brooklyn, where the film is being exhibited, if the exhibition is continued, and has notified the licensees of all other motion picture theaters in the city of New York that their licenses will be revoked if the play is exhibited in them.

The plaintiff is not the licensee of any theater, nor has he contracted with the Grand Opera House for the privilege of exhibiting it there; but he is the owner of the film and interested in the profits of the exhibition of it by his licensees. We shall assume for the purpose of decision that he has a standing to complain. The direct question raised is the power of the license commissioner to revoke the license of a theater; the plaintiff denying that he has it.

The charter of Greater New York as amended by chapter 475, Laws 1914, provides in section 641:

"The commissioner of licenses shall have cognizance and control of the granting, issuing, transferring, renewing, revoking, suspending and cancelling: * * *

"2. Of all licenses and permits now issued by the bureau of licenses attached to the mayor's office. * * *

"4. Of all licenses in relation to theaters and concerts now issued under the provisions of sections 1473, 1474, 1475 and 1483 of the Greater New York Charter, by the police commissioner. * * *

"The commissioner of licenses is hereby vested with all the powers and functions now exercised in relation to licenses by (1) the mayor pursuant to the code of ordinances of the city; (2) by the bureau of licenses attached to the mayor's office; (3) by the commissioner of licenses appointed by the mayor under the provisions of article 11 of the General Business Law; (4) by the police commissioner in relation to theaters and concerts. * * * "

The act gives the license commissioner in express terms the power to revoke, and in conformity with it the bill alleges that he has "full power and authority to grant and revoke and in other manner regulate the issuance of licenses to theaters in the city of New York."

The Court of Appeals of the state of New York has not passed upon the question, but the Appellate Division for the First Department has done so. In Message Photo Play Co. v. Bell, Com'r, 179 App. Div. 13, 166 N. Y. Supp. 338, the lower court had enjoined the commissioner from revoking or threatening to revoke the license of any theater in which the plaintiff's photo play called "Birth Control" should be exhibited. The Appellate Division reversed the judgment, finding the power to revoke in the provision of the charter above mentioned confirmed by sections 31 and 41 of article 2 of chapter 3 of the Code of Ordinances of the City of New York adopted in 1916. By chapter 382, Laws 1917, amending section 1556 of the charter, all courts of the city of New York are required to take judicial notice of city ordinances. While we doubt whether this provision is binding on the federal courts, inasmuch as both parties have referred to the ordinances, we may say that we think the licensing of moving picture

theaters is regulated by article 2 of chapter 3 of the Code of Ordinances, which, read together with section 641 of the charter, imposes no limitation upon the license commissioner's power to revoke. Article 1 covers provisions applying to theaters generally. Article 2 covers the moving picture theaters in which the seating capacity does not exceed 600 persons and which have no stage or scenery specifically. Article 2 covers common shows specifically. Section 4 of article 1 provides for the revocation of licenses by any judge or justice of a court of record for violation of the provisions of that article, which are such as to prevent fire and panic, Sunday performances, sale of liquors, etc. No such violation is relied upon by the license commissioner in this case, and therefore the section does not apply. Except for these violations the authority is conferred upon him to grant and revoke licenses for moving picture theaters, subject to no limitation. This must have been the view of the Appellate Division in the Message Photo Play Case, supra, because any want of power in the commissioner to revoke without such judicial proceeding could not have been overlooked by court and counsel.

Yet the license commissioner, like all such officials, must exercise his discretion fairly, honestly, upon correct information, and with a view to the moral and physical welfare of the public. There was no evidence in the case cited, and there is none in this case, that the commissioner has not honestly concluded that the exhibition of the film to mixed audiences will be injurious to decency and morality. The proofs show, and we may take judicial notice of the fact, that intelligent persons, deeply interested in the welfare of the community, especially of youth, entertain diametrically opposite opinions as to the effect of public discussions of sex questions. Under these circumstances the fair and honest judgment of the official primarily charged with the duty of deciding should not be interfered with by the courts, especially by a federal court in the case of a state official.

The motion to dismiss an appeal heretofore taken under section 129 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1134 [Comp. St. § 1121]) from an interlocutory injunction is granted, because it came to an end when the final injunction issued.

The decree is reversed.