(No. 19999.

The United Artists Corporation, Appellee, *vs.* William Hale Thompson, Mayor, *et al.* Appellants.

*Opinion filed April 17, 1930—Rehearing denied June 17, 1930.*

Samuel A. Ettelson, Corporation Counsel, William V. Daly, and James N. Kearns, (Carl J. Appell, of counsel,) for appellants.

John F. Higgins, and Myer H. Gladstone, for appellee.

Mr. Justice Heard delivered the opinion of the court:

This case comes to this court on an appeal from a decree of the circuit court of Cook county enjoining and restraining the appellants, the city of Chicago and its officers, from in any manner interfering with the exhibition of a talking motion picture called "Alibi," owned by the appellee, the United Artists Corporation, and further enjoining and restraining them from confiscating such picture, its films and prints, from interfering with the transfer and transportation of such picture and the films, and from continuing to refuse to issue a permit for the showing or exhibition of said talking motion picture.

The bill of complaint sets forth certain sections of the municipal code of Chicago. Section 2785 makes it unlawful for anyone to exhibit a motion picture without having

secured a permit therefor from the superintendent of police, and further makes it unlawful to lease or transfer such picture or films, or apparatus from which a series of pictures can be produced, to any exhibitor without first securing a permit therefor from the superintendent of police. Section 2786 provides for the application for a permit and requires the superintendent of police to inspect the films, etc., or cause them to be inspected, and to issue a permit or deny the same within three days after inspection. Section 2787 defines immoral pictures and forbids the issuance of a permit for the same. If the picture is immoral or obscene, or portrays depravity, criminality or lack of virtue of a class of citizens of any race, color, creed or religion and exposes them to contempt, derision or obloquy, or tends to produce a breach of the peace or riots, or purports to represent any hanging, lynching or burning of a human being, it shall be the duty of the superintendent of police to refuse such permit, otherwise it will be his duty to grant the same. The section provides for an appeal to the mayor in the event the superintendent of police refuses a permit. The appeal shall be presented in the same manner as the original application to the superintendent of police, and the action of the mayor on any application for a permit shall be final. Section 2790 was set forth in the bill of complaint as follows:

"Sec. 2790. *No transfer of objectionable films—confiscation—penalty.*—In case a permit shall be refused for any such moving picture plates, films, rolls or other like articles or apparatus from which a series of pictures for public exhibition can be produced, it shall be unlawful for any person, firm or corporation to lease or transfer the same to any exhibitor of moving pictures or otherwise put same into circulation for purposes of exhibition within the city. In every case where such objectionable moving picture plates, films, rolls or other like articles or apparatus from which a series of pictures for public exhibition can be produced shall

be put into circulation contrary to the provisions of this section the same shall be confiscated, and in addition thereto the person, firm or corporation so leasing, transferring or putting the same into circulation shall be fined not less than $50 nor more than $200 for each offense."

The bill of complaint further sets forth the creation and existence of a censor board, and that the appellee made due application for a permit to the superintendent of police, who refused it, assigning in a letter of rejection as his reasons for such action: "This picture portrays immorality, criminality and depravity. It features the attempted robbery of a warehouse by a gang of criminals; the murder of the policeman who caught the thieves in the act; shocking and unlawful third degree methods on the part of the police to force a confession from one of the gangsters; the murder of a man after it was discovered that he was a detective in disguise; the clever plan used by the gang to establish an alibi to cover up the robbery and the murder. The police methods used are brutal and revolting, and would tend, in the opinion of the censor board, to create contempt and hatred for the entire police force."

The bill further alleged the expenditure of about $600,-000 for the making and manufacture of such talking motion picture and the existence of contracts in Chicago with about sixty exhibitors; that the superintendent of police did not view the picture; that it did not portray immorality, criminality or depravity nor feature those things which were enumerated in the letter of rejection. The bill further alleged that the picture had passed the censor boards of various other States and has been exhibited in various cities, and that the authorities of the city of Chicago were the first civic authorities that refused to permit its exhibition.

The bill of complaint questions the constitutionality of section 2790 as being in contravention of sections 2, 4 and 6 of article 2 of the constitution of: the State of Illinois. The bill further sets forth that the General Assembly

has legislated upon the matters contained in section 2787 and on the penalties provided for the violation thereof, and that the legislation by the State of Illinois supersedes the ordinance of the city of Chicago.

A preliminary injunction was entered by the court in accordance with the prayer for relief in the bill, but the court prohibited the appellee from exhibiting the picture until the court had viewed the same and had ruled on the motion of appellants to dissolve the temporary injunction.

The appellants answered the bill of complaint, and by agreement a hearing was had on the motion of the appellants to dissolve the temporary injunction and on the bill of complaint and the answer. The court thereupon denied the motion of the appellants to dissolve the temporary injunction, and found, practically, that the appellee's allegations of fact in its bill of complaint were true and ordered a permanent decree in accordance with the prayer for relief in the bill of complaint.

It is claimed by appellants that appellee's remedy, if any, was in an action at law for *mandamus* instead of a suit in equity for an injunction. Ordinarily the proper remedy for a party aggrieved by the wrongful refusal of a city official to grant him a permit where the granting of such permit is made by city ordinance a condition precedent to the doing of some act is by a suit in *mandamus* to compel the issuance of such permit. (*Klever Karpet Kleaners* v. *City of Chicago,* 323 Ill. 368.) In the instant case, however, appellee is not by this suit attempting to compel the issuance of such permit but by its bill alleges that the ordinance requiring such permit is invalid, and claims that therefore it has a right to exhibit the picture, "Alibi," without such permit. The bill alleges that the commissioner of police has threatened that in case such picture is exhibited without such permit he will confiscate it under the provisions of the void ordinance, which would result in depriving appellee of its property without due process of law. In such case ap-

pellee could not be required to stultify itself by bringing suit in *mandamus* to compel the issuance of a permit, which it claims the city has no right to require or issue by reason of the invalidity of the ordinance. Neither can it be required to take the chance of an arrest and the summary, arbitrary and unlawful confiscation of its property without due process of law and thereby be irreparably injured by reason of inability to reproduce the same. In *Western Theological Seminary* v. *City of Evanston,* 325 Ill. 511, in a suit for an injunction to restrain the enforcement of a void ordinance, it is said: "The privilege of every citizen to use his property according to his own will is both a liberty and a property right. 'Liberty' includes not only freedom from servitude or restraint, but also the right of every man to be free, in the use of his powers and faculties, to pursue such occupation or business as he may choose, and to use his property in his own way and for his own purposes, subject only to the restraints necessary to secure the common welfare. (*Ruhstrat* v. *People,* 185 Ill. 133; *Frorer* v. *People,* 141 id. 171; *Haller Sign Works* v. *Physical Culture Training School,* 249 id. 436.) Both liberty and property are subject to the police power of the State, under which new burdens may be imposed on property and new restrictions placed on its use when the public welfare demands it. The police power is, however, limited to enactments having reference to the public health, comfort, safety or welfare. An act which deprives a citizen of his liberty or property rights cannot be sustained under the police power unless a due regard for the public health, comfort, safety or welfare requires it. (Citing authorities.) The legislative determination as to what is a proper exercise of the police power is not conclusive. Whether the means employed have any real, substantial relation to the public health, comfort, safety or welfare, or are arbitrary and unreasonable, is a question which is subject to review by the courts, and in determining that question the courts will disregard

mere forms and interfere for the protection of rights injuriously affected by arbitrary and unreasonable action.— *City of Aurora* v. *Burns,* 319 Ill. 84." See, also, *Cicero Lumber Co.* v. *Town of Cicero,* 176 Ill. 9, and *Dempster* v. *City of Chicago,* 175 id. 278.

The picture, its prints and films were the personal property of appellee, and, while a court of equity will not intervene for the sole purpose of preventing the enforcement of a void ordinance, appellee had a right to call upon a court of chancery to prevent, by injunction, confiscation of its property, without due process of law, under a void ordinance. Where there is any ground of equity jurisdiction, a court of equity, having acquired equitable jurisdiction to grant equitable relief, will retain the case to do complete justice between the parties as to all matters germane to such ground. (*Baker* v. *Salzenstein,* 314 Ill. 226.) Appellants did not in the circuit court demur to the bill or make any claim that it did not on its face state a cause of action sufficient to give the court of chancery jurisdiction to grant relief, but they answered the bill, taking issue as to many of its material allegations, and went to trial on the merits of the case. The decision of the trial court was based on its consideration of the merits, and we will likewise consider the case on its merits.

It is contended by appellee that section 2790, providing for the confiscation of motion pictures put in circulation after a permit for exhibition has been refused, is unconstitutional, in that it violates section 2 of article 2 of the Illinois constitution and section 6 of the same article. Section 2790 provides for the confiscation of moving picture plates, films, rolls or other like articles or apparatus from which a series of pictures for public exhibition can be produced, when the same are put into circulation contrary to the provisions of that section. The ordinance does not provide a forum for such confiscation nor does it provide for notice to the owner or other persons interested in the prop-

erty sought to be confiscated. Due process of law in the regular course of judicial proceedings requires notice to the defendant before his property can be confiscated or condemned, as a matter of right and not of favor, and a law which purports to authorize condemnation or confiscation without notice confers no authority and is no justification for such condemnation or confiscation, even though, as a matter of fact, it may happen that he had knowledge of the proceedings. (*People* v. *Marquis,* 291 Ill. 121.) The portion of this section providing for confiscation is therefore unconstitutional, but it is not such an integral part of the ordinance that its invalidity will render the whole section of the ordinance void.

The power of a city to provide for a board of censors and to require a permit·before any moving picture can be exhibited in a municipality cannot be doubted. Moving picture shows, by reason of the low price of admission, are frequently patronized by large numbers of children, as well as by those who by reason of limited means or local conditions cannot attend the productions given in regular theatres. The audiences include those classes whose age, education and situation in life especially entitle them to protection against the evil influence of obscene and immoral representations. The welfare of society demands that every effort of municipal authorities to afford such protection shall be sustained unless it is clear that some constitutional right is interfered with. (*Block* v. *City of Chicago,* 239 Ill. 251.) Respect for law is the basis of our civilization, and any production which tends to cause disrespect for law and the officials charged with its enforcement would tend to immorality, and the exhibition of such picture would necessarily be attended with evil effects upon youthful spectators. *Block* v. *City of Chicago, supra.*

The record in this case is in a peculiar condition. The judge who heard the case requested that he might be allowed to view the picture, and, after having viewed the

same, over the objection of the appellants refused to allow them to examine witnesses and introduce in evidence the manuscript of the exact spoken words used by the characters in the picture and decided the cause on his view, alone. The manuscript was offered as evidence and is included in the certificate of evidence. In refusing to allow the manuscript to be admitted in evidence the court said: "Well, so that you may have a full record you may make that as an offer and include it in the record, and the objection to that will be sustained on the ground that the introduction of the spoken words without viewing the picture—a thing that this court did do and does take into consideration in this case—cannot be regarded as evidence because it is only a part of the story told, and that so inaptly told that it can have no probative value." On August 6, 1929, after his view of the picture, the court stated, among other things: "There are no parts of this picture that are immoral. * * * Whether or not a picture censored and is an immoral scene and comes within the prohibited class must be judged by the court from an examination of the picture itself." He then made a statement as to his view of the picture and what it showed, largely in general terms, and gave his opinion with reference to it, stating, "There is nothing in that picture—not a single scene—that could be said to come within the provisions of the ordinance before me." He then denied the motion to dissolve the temporary injunction. After some discussion as to whether or not a final order should be entered, the court said: "If you are willing, then, on the bill and answer, the viewing of the picture by the court will be regarded as all the evidence in the case. By agreement of the parties such order as is now entered will be treated as the final order in the case." Upon counsel for appellants stating that he would like the record to show they offered the testimony of witnesses, which the court held was unnecessary, the court said: "The court holds that witnesses may not testify in a case of this kind as to whether

in their opinion obscenity or immorality is shown by the picture. The court must pass upon that question from an examination of the subject itself." Counsel for the city then stated: "We have here what is actually all the statements taken in this picture. Will you allow me to introduce this?" To which the court replied, "No, because that, without the picture, tells nothing." On August 15, 1929, the court allowed some formal proof to be made for the purpose of making a record on behalf of the appellee as to its application for a permit and its rejection, and also allowed the chairman of the motion picture censor board of Chicago to testify as to a view of the picture and to give something of a description thereof.

The situation here on review is a novel one. We do not have an opportunity of a view of the picture upon which the court acted, neither is the competent evidence of the manuscript of the talking part of the picture in evidence. In a talking picture the words used by the actors are just as important as the scenes portrayed upon the screen. A picture apparently harmless in itself may have a very deleterious effect upon the minds of the spectators when its true meaning is brought out by the words of the actors. It was incumbent upon the appellee to prove by competent evidence that the appellants unreasonably and arbitrarily refused the appellee a permit to exhibit the talking picture. While the record here for review is very unsatisfactory, yet it contains enough to show that the appellee failed to make such proof. Without going into details, suffice it to say that the picture deals with murderers on one side and the police on the other. It portrays the murder of a policeman in the discharge of his duty and the murder of a "stool pigeon" who had won the confidence of the criminals. It contains threats of unlawful killings, made both by the criminals and by the police. It represents an exhibition of an attempt by police officers to ex-

tort evidence from prisoners by the use of what is known as the "sweating process," which practice has been most severely condemned by this court, and of which it is said in *People* v. *Rogers,* 303 Ill. 578: "Its natural tendency is rather to increase crime and absolute disrespect for the law and for the courts." While by the methods adopted in the picture by the police the murderer was discovered and apprehended, he did not expiate his crime as the result of a trial in a court of justice, but after his apprehension he was threatened with instant death by officers who aimed revolvers at him and fired several shots. While only blank cartridges were fired by the police with intent to frighten and intimidate the criminal, yet its effect was such as to cause him to leap to his death from an open window of the rocm in which he was being threatened and intimidated.

In our opinion, based upon the competent evidence in the case, the exhibition of this picture could not fail to have a tendency to cheapen the value of human life in the minds of youthful spectators, and its exhibition would have a tendency toward immorality and to cause an increasing disrespect for the law and its officers. The appellants were fully justified in refusing a permit for its exhibition.

The decree of the circuit court of Cook county is reversed and the cause is remanded to that court, with directions to dissolve so much of the injunction as restrains the appellants from refusing to issue a permit for the showing and exhibition of the talking picture known as "Alibi" and from in any manner interfering with the exhibition of such picture in the city of Chicago by the appellee or by any person with whom the appellee shall contract for such exhibition.

*Reversed and remanded, with directions.*