SCHUMAN *v.* PICKERT.

1. THEATERS AND SHOWS — TALKING MOTION PICTURES — CONSTITU-
TIONAL LAW.
   An exhibitor has a constitutional property right to show a talking
   motion picture film which is not indecent or immoral.

2. MUNICIPAL CORPORATIONS — COMMISSIONER OF POLICE — COMMON
COUNCIL—CENSORSHIP OF MOTION PICTURES.
   A commissioner of police has no discretion to extend his own
   powers under the guise of interpreting ordinance conferring
   power of censorship of moving pictures, although council may
   confer additional power of suppression.

3. SAME—ORDINANCES—MOTION PICTURES—PUBLIC PEACE.
   Ordinance giving commissioner of police power to reject indecent
   or immoral motion pictures *held*, not to authorize him to reject
   a talking motion picture which may have a tendency to sup-
   port a foreign political policy, such as communism or sovietism,
   under general power to preserve the public peace and prevent
   crime (Detroit Comp. Ord. 1926, chap. 21, § 5, subd. [c];
   chap. 70, § 20).

4. WORDS AND PHRASES—IMMORALITY.
   "Immorality," as used in ordinance conferring powers of sup-
   pression of moving pictures upon commissioner of police, is not
   necessarily confined to matters sexual in their nature but may
   be that which is *contra bonos mores*, contrary to good order or
   public welfare, inimical to the rights and common interests of
   others in a legal and commercial sense (Detroit Comp. Ord.
   1926, chap. 70, § 20).

5. COSTS—PUBLIC MATTER—GOOD FAITH.
   No costs are allowed against commissioner of police who acted in
   good faith in a public matter although his action is not sus-
   tained on appeal.

Appeal from Wayne; Richter (Theodore J.), J.
Submitted April 14, 1936.   (Calendar No. 38,771.)
Decided October 5, 1936.

Mandamus by Ida W. Schuman, doing business as Cinema Guild of Detroit, against Heinrich A. Pickert, Commissioner of Police of City of Detroit, to compel the issuance of a permit to show a certain motion picture. Writ denied. Plaintiff appeals. Reversed and writ allowed.

*Sempliner, Dewey, Stanton & Honigman* (*Thomas L. Poindexter,* of counsel), for plaintiff.

*Raymond J. Kelly,* Corporation Counsel, and *Nathaniel H. Goldstick,* Assistant Corporation Counsel, for defendant.

BUSHNELL, J.   On August 30, 1935, appellant secured a permit from the commissioner of police of the city of Detroit to exhibit a talking motion picture entitled ''The Youth of Maxim.'' Prior to the public showing of the picture, this permit was revoked.

Both sides produced leading citizens who testified in the circuit court upon the hearing for a writ of mandamus.   One of these indicated that the film depicted the revolution in Russia in 1907.   He said:

''It is not communistic except that it refers to Lenin.   It is as communistic as the picture of the Boston Tea Party.''

None of the witnesses could point to any direct portrayal of sexual immorality though some view it as subversive of the accepted principles of our form of government and inflammatory in nature. Opinions, however, differed on this, as well as its probable effect upon the ''young and immature.''

The trial judge, after a personal view of the proposed picture, declined to grant the writ of man-

damus, basing his decisions upon an absence of proof of flagrant abuse of discretion on the part of respondent.

Chapter 70, § 20, of the compiled ordinances of the city of Detroit for 1926, reads:

"Every person or company operating under this ordinance and in whose place of amusement or exhibition shall be displayed moving pictures of any character, kind or description shall present the pictures, films or plates so sought to be displayed to the commissioner or superintendent of police for his inspection. Said commissioner or superintendent of police is hereby authorized, and it is hereby made his duty to inspect or cause to be inspected said pictures, plates or films, and if in his judgment they are indecent or immoral, he shall reject the same and notify the person or company operating the place of amusement or exhibition from whom said plates or films were received, that the same cannot be used; and the person or company using them after they have been rejected by the commissioner or superintendent of police shall be punished as hereinafter provided. (Approved September 24, 1907)."

The commissioner was not called as a witness but his reasoning on the claimed immorality of the picture is stated in the amended answer. He says:

"The said motion picture, 'The Youth of Maxim,' is immoral for the reason that the same is pure Soviet propaganda and is likely to instill class hatred and hatred of the existing government and social order of the United States and that because of the foregoing the said motion picture is contrary to the terms and provisions of Chapter 70, § 20 of the compiled ordinances of the city of Detroit, 1926, hereinbefore set forth."

The original answer gave a different reason:

"That protests were lodged with this respondent by representatives of various religious organizations, veterans organizations and civic organizations protesting against the showing of the said film and averring that the showing of the said film would be likely to incite class hatred and riots.

"And this respondent further avers that under the provisions of chapter 21, § 5, subd. (c) of the charter of the city of Detroit, this respondent is charged with the duty of preserving the public peace and preventing of crime, arrest of offenders and to protect the rights of persons and property, guard the public health, preserve order and enforce the laws of the State and ordinances of the city, which in the exercise of his discretion would preserve the public peace and prevent crime, protect the rights of persons and property, and preserve order, and that by virtue of such authority this respondent did revoke the permit for the showing of said motion picture."

Respondent, acting in the capacity of a moving picture censor under the ordinance, cannot call into action his general powers to "preserve the public peace and prevent crime, arrest offenders," etc., without at the same time exercising his duty to "protect the rights of persons and property, guard the public health, preserve order and enforce the laws of the State and the ordinances of the city." Chapter 21, § 5, subd. (c) of the charter of the city of Detroit. Nor is he specifically charged with the self-suggested duty of preserving the international relations between the United States of America and the Union of Soviet Socialist Republics. The record silences the latter suggestion but emphasizes the first—the enforcement of "the ordinances of the city" including this one, wherein his authority is

specifically limited to matters of decency and morality.

Deep love for our own form of government is inclined to accentuate our aversion for that of others, but it should not warp our judgment or dull our vision. The petitioner has a constitutional property right to show a film which is not indecent or immoral.

The decency of the film is hardly disputed, but its morality is questioned. Appellee properly suggests that immorality is not necessarily confined to matters sexual in their nature; it may be that which is *contra bonos mores* (Bouvier's Law Dictionary [Rawles 3d Rev.]) ; or "not moral, inconsistent with rectitude, purity or good morals; contrary to conscience or moral law; wicked; vicious; licentious, as, an immoral man or deed," Webster's New International Dictionary (2d Ed.). Its synonyms are: corrupt, indecent, depraved, dissolute; and its antonyms are: decent, upright, good, right. That may be immoral which is not decent.

Appellee argues that a motion picture film may be suppressed on the broad grounds that it is hostile to the welfare of the general public, citing *Exchange National Bank of Fitzgerald* v. *Henderson,* 139 Ga. 260 (77 S. E. 36, 51 L. R. A. [N. S.] 549). "Immoral" is also defined as:

"Contrary to good order or public welfare; inimical to the rights or common interests of others; a legal and commercial sense." Century Dictionary and quotations therein.

No adjudicated cases are found in this jurisdiction construing ordinances authorizing the censorship of motion pictures but the matter has been considered elsewhere. See, *Fox Film Corp.* v. *City of Chicago,* 247 Fed. 231; *Chicago* v. *Fox Film Corp.*

(C. C. A.), 251 Fed. 883; *Anderson* v. *City of Hatties-burg,* 131 Miss. 216 (94 South. 163); *Bainbridge* v. *City of Minneapolis,* 131 Minn. 195 (154 N. W. 964, L. R. A. 1916 C, 224, 227); L. R. A. 1918 A, 231; *Epoch Producing Corp.* v. *Davis,* 19 Ohio N. P. (N. S.) 465; *Message Photoplay Co., Inc.* v. *Bell,* 179 App. Div. 13 (166 N. Y. Supp. 338); *In re Fox Film Corp.,* 295 Pa. 461 (145 Atl. 514, 64 A. L. R. 499); *United Artists Corp.* v. *Thompson,* 339 Ill. 595 (171 N. E. 742). See, also, cases annotated in 64 A. L. R. 505.

In our opinion decision should rest upon lack of power in respondent and not on the question of abuse of his discretion. The legislative body of the city has granted him power of suppression and has limited it to "indecent or immoral" pictures. The construction of the ordinance and the scope of respondent's powers are questions of law. Respondent has, and can have, no discretion to extend his own powers under guise of interpretation. Nor can the opinion of witnesses do it for him. If further power of suppression is desirable, the council may provide it by amendment in apt words.

The adoption of respondent's contentions, as to his discretion in construing and applying the ordinance, would invest him with dangerous and plainly unconstitutional power. It would enable him to hold as "immoral" and suppress any picture involving social problems, politics, religion or any human activity according to his own view, and there would be no redress if his acts should be supported by the opinion of witnesses. Zealots could, and would, furnish the required proof. The most conscientious and high-minded persons, as well as intense partisans, find no difficulty in supporting their contentions as moral issues, as the witnesses in this case have done.

Here, they say that the picture is immoral because it has a tendency to support communism or sovietism. The ordinary and popular sense of the word "immoral" does not include the interpretation given it by the respondent.

No feeling against foreign political policies or forms of government should be permitted to establish the principle that a police officer may be invested with discretion to determine his own powers of suppression or change the plain terms of his authority. The constitutional method is for the legislative body of the city clearly to define and delimit the power of its officers. By such method the scope of the ordinance may be determined, the validity of the authority tested, and constitutional rights preserved.

The trial judge was in error and a writ of mandamus should issue. The order below is vacated and the trial judge is directed to issue the writ. Respondent having acted in good faith in a public matter, no costs will be allowed.

NORTH, C. J., and FEAD, BUTZEL, and SHARPE, JJ., concurred with BUSHNELL, J.

WIEST, J. (*concurring in result*). The ordinance, perhaps unfortunately, does not explicitly fit the case and, saying no more, I concur in the result.

TOY, J., concurred with WIEST, J. POTTER, J., did not sit.