Aneta Abramovici et al., Appellees, v. L. O. Thieme, Trading as L. O. Thieme and Company, Appellant.

Gen. No. 39,908.

Opinion filed April 11, 1938.

Joseph W. Cox, of Chicago, for appellant.

Paul O'Donnell, of Chicago, for appellees.

Mr. Presiding Justice O'Connor delivered the opinion of the court.

June 22, 1935, plaintiffs filed their complaint in chancery for an accounting, claiming they were heirs of Wolf Mandel, a resident of New Jersey, who died there intestate; that defendant had received from the estate $8,552.15, and that they were entitled to this sum with interest thereon from the time it was received by defendant. It was alleged that defendant had maliciously converted or embezzled the funds. Defendant answered, and the cause was referred to a master in chancery, who took the evidence and made up his report. He found that defendant should be charged with having received $7,743.31, expended $1,049.50, leaving a balance due plaintiffs of $6,693.81, and that plaintiffs were entitled to interest on this sum at five per cent per annum from August 15, 1930, or $2,119.70, making a total of $8,813.51. Objections to the report were overruled; afterward a decree was entered in accordance with the recommendations of the master, and defendant appeals.

The master in his report found that Wolf Mandel, a resident of New Jersey, died intestate December 3,

1928, leaving a number of heirs, including plaintiffs, who were residents of Roumania; that the estate was probated in the orphan's court of Passaic county, New Jersey; that William H. Young was appointed administrator of the estate and Herman. W. Fishbein, an attorney and master in chancery, was appointed attorney for the estate; that defendant L. O. Thieme, as L. O. Thieme & Co., had for more than 25 years been in the business of seeking heirs and any collateral matters in connection therewith, with its principal offices in Chicago; that on his letterheads appears the following: ''L. O. Thieme & Co. International Law and Banking Exchange, L. O. Thieme, Commissioner of Deeds and Oaths for the States of New York and California''; that on November 29, 1929, defendant addressed a circular letter to attorneys at Bucharest, Roumania, in which he said: ''We have ascertained that in your country several collection agents (under the pretentious names of bankers), . . . have without authority, obtained . . . information regarding decedent's estates, in which foreign heirs are interested, and that they call on persons in Europe, and without having any authority, prevail upon them under any unfounded pretext to execute powers of attorney.

''In order to stop such misconduct, we shall wire you in cases of substantial estates,'' etc., and blank forms of powers of attorney were inclosed. The master further found that on December 28, 1931, defendant addressed another letter to the same attorneys concerning the securing of powers of attorney from heirs of persons who died in the United States leaving heirs in Roumania, in which he said: ''We take this opportunity to call your attention to the fact that during the last few years, there have appeared in Europe, American 'Banking houses' which are neither bankers nor lawyers by profession, who persuade the heirs of decedents whose estates are pending in America, by

all kinds of questionable ways and means to execute powers of attorney . . . .

"It does not help the heirs at all if people correspond with an administrator or executor from the States." The master further found that heirs in Roumania executed powers of attorney to the attorneys of Bucharest to collect their distributive shares of the Mandel estate in New Jersey; that afterward those attorneys executed powers of attorney substituting the defendant in their stead; that thereafter defendant retained an attorney in New Jersey to take charge of the matters; that shortly before this was done, Young, administrator of the estate, filed his final accounting in the New Jersey court, showing cash receipts of more than $13,000, and two mortgages, one for $3,800 and the other for $2,000. The report also showed expenditures of $3,437.77, leaving a balance, including the two mortgages, of $15,400.75 to be distributed among the Mandel heirs; that the Mandel heirs, represented by defendant, were entitled to 5/9ths of the estate, as of August 15, 1930, and after deducting certain inheritance taxes, found the net amount to be $7,743.31. The master further found that defendant agreed to and did accept the two mortgages, aggregating $5,800, in lieu of cash, and received the balance, $1,943.31, in cash, coming to the heirs; that the mortgages were uncollectible, and defendant instructed his New Jersey attorney to institute foreclosure proceedings, which was done, one of which proceeding was still pending. The other mortgage was foreclosed, the premises bought in the name of defendant and afterward disposed of by him for $1,121; that there was a parcel of real estate belonging to Mandel in his lifetime, and defendant authorized a partition suit to be filed, which was still pending; that defendant remitted $807.07 to the attorney in Bucharest, but at no time rendered a complete or detailed account. The master

then found that defendant, for the first time, offered an itemized account on the hearing, showing cash receipts of $3,199.58, the two mortgages for $5,800, and a number of items of disbursement totalling $3,216.77. The master recommended the disallowance of certain of the expenses as follows: (1) $640 for traveling expenses of defendant in going to New Jersey, as defendant had retained an attorney in New Jersey and the expense was unnecessary and a part of this item was for other business defendant was attending to in the east; (2) $36 for telephone calls to New Jersey, as no sufficient reason was given for incurring this expense; (3) $56.18 for cablegrams to Roumania, which the master found were not for the benefit of the heirs but were in reality warnings to the attorney in Roumania to prevent the attorney for the administrator, who went to that country, from securing the signatures of the heirs; (4) $35 for investigation in Canada, where he endeavored to secure powers of attorney for other heirs in that country; (5) $740, claimed by defendant for compensation and expenditures made by him in foreclosing the two mortgages, aggregating $300.91, for the reason that defendant was not authorized to take the mortgages in lieu of money, and that his action "comes dangerously close to champerty and maintenance. He advised his correspondents not to communicate with administrators or executors or their attorneys, reflected upon their fairness and recommended litigation rather than settlement of Estates," etc.; (6) $158.22 miscellaneous expenses of New York office of defendant, there being no proof that they were actually incurred or that they were necessary. The master further said, "The entire course of conduct of the defendant in representing the foreign heirs of WOLF MANDEL evidences a surprising want of appreciation of the rights and duties of one occupying a position of trust and confidence.

. . . That instead of representing the foreign heirs, he was acting for his own profit,'' etc.

The chancellor sustained the master, and upon a careful consideration of all the evidence in the record and the argument of counsel, we are of opinion that the findings and recommendations are warranted by the evidence and the law. In *Lehman v. Rothbarth,* 159 Ill. 270, the court said (p. 282) : ''It is well settled that a trustee or agent can recover no fees or commissions for his services unless he has faithfully discharged his duties toward his principal or *cestui que trust.* (*Hoyt v. Shipherd,* 70 Ill. 309; *Brannan v. Strauss,* 75 id. 234.) 'If he has neglected his duties, exercised bad faith in the conduct of his trust, or committed a breach of his obligation in any way, he forfeits his right to a compensation.' (27 Am. & Eng. Ency. of Law, 187 . . . .)''

Defendant contends that the court erred in allowing interest from August 15, 1930, the date of the distribution, for the reason that, ''No right to receive interest could exist . . . prior to the time a demand is made upon this defendant''; that there was an honest dispute between the parties as to the amount due, if any, which depended upon a consideration of the terms of the powers of attorney and upon certain questions of fact, and that there was no unreasonable or vexatious delay. The master found, and the undisputed evidence shows, that on August 15, 1930, the $7,743.31 was turned over to defendant. This sum included the two mortgages aggregating $5,800. Defendant had no right to accept these mortgages but might have received a less amount if the mortgages had been discounted. He made no detailed account until the hearing before the master, and the evidence shows and the master found that throughout the whole proceeding he acted in his own interest and contrary to that of plaintiffs, and this finding was approved by the chancellor. The master

made his report December 15, 1936. The expenditures to which we have above referred, for which defendant claims credit, were unwarranted, as were the two foreclosure suits, during all of which time plaintiffs have been kept out of their money. In these circumstances we think plaintiffs were entitled to interest. Sec. 2, ch. 74, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 67.02].

The decree of the superior court of Cook county is affirmed.

*Decree affirmed.*

MCSURELY and MATCHETT, JJ., concur.