MARIE LEHMAN *et al.*

*v.*

PAUL ROTHBARTH.

*Filed at Springfield January 17, 1896.*

1. APPEALS AND ERRORS—*findings on conflicting evidence will stand, on appeal.* The finding of the court below on conflicting evidence will not be disturbed merely because the higher court might, as an original proposition, have found the facts differently.

2. EVIDENCE—*burden rests on trustee to account for assets.* The burden of accounting for the assets of the estate is properly cast upon the trustee.

3. TRUST—*trustee need not account for profits on investment—compound interest.* The profits of a purchase, made by one occupying the relation of trustee to an estate from which he obtains as a loan three-quarters of the purchase money, cannot be claimed by the estate, but his repayment of the money, with compound interest, will do substantial justice.*

4. SAME—*trustee forfeits compensation by delinquency.* A trustee can not demand a compensation for doing his duty to the estate, which he refused and neglected to do properly until compelled.

5. HUSBAND AND WIFE—*what will not release husband from expenses of family.* The expenses of a family, as between husband and wife, cannot be wholly cast upon her so long as the husband continues to live with the family, merely because he objects to the extravagant mode of living at their residence, and offers to provide a suitable residence elsewhere.

APPEAL from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

PENCE & CARPENTER, for appellants:

The services of a trustee, in the absence of a provision for compensation in advance, are to be performed gratuitously, without regard to the advantage that may result from his superior care, skill and diligence in the management of the trust estate. A trustee is not entitled to compensation for personal trouble and loss of time. Perry

---

*The liability of fiduciaries for compound interest is considered in an extensive review of English and American authorities in a note to *In re Ricker*, 29 L. R. A. 622.

on Trusts, secs. 904, 906; Hill on Trustees, 889; *Cook* v. *Gilmore,* 133 Ill. 139; *Buckingham* v. *Morrison,* 136 id. 437; *Constant* v. *Matteson,* 22 id. 546; *Hough* v. *Harvey,* 71 id. 72; *Huggins* v. *Rider,* 77 id. 360.

If a trustee makes a profit with the trust funds in his hands, the beneficiary always has the right to elect to take the profit instead of interest, and we did elect to take the profit. *Ogden* v. *Larrabee,* 57 Ill. 389; *Heathcote* v. *Hulme,* 1 J. & W. 122; 1 Perry on Trusts, secs. 468, 470; *Barney* v. *Saunders,* 16 How. 543; *Bond* v. *Lockwood,* 33 Ill. 212; *Docker* v. *Somes,* 2 M. & K. 655; *Willette* v. *Blandford,* 1 Hare, 253.

All these moneys were mixed with Rothbarth's own moneys in his own bank account, and were used by him in his own affairs, for his own benefit, hence he is to be charged compound interest. *Ogden* v. *Larrabee,* 57 Ill. 409; *Bond* v. *Lockwood,* 33 id. 216; *In re Steele,* 65 id. 322; *Hough* v. *Harvey,* 71 id. 73; *Wadsworth* v. *Connell,* 104 id. 369.

GREEN, ROBBINS & HONORE, for appellee:

It will be noticed that, so far as appellants are concerned, the points made involve controverted questions of fact, only. This court has repeatedly decided that in such cases it will not disturb the finding of the chancellor. *Hanks* v. *Rhoads,* 128 Ill. 404; *Coari* v. *Olsen,* 91 id. 273; *Lane* v. *Lesser,* 135 id. 567; *Johnson* v. *Johnson,* 125 id. 510.

This is especially true where the matters in dispute are items of account, the evidence in regard to which has been considered and weighed by the court below. *Ford* v. *Ford Manf. Co.* 73 Ill. 48.

The court will allow a recovery for services in cases where there never has been any actual agreement between the parties, nor even an intention in the minds of either. In fact, the law frequently implies a promise against the intention of the parties. *Hickan* v. *Hickan,* 46 Mo. App. 504; *Kinney* v. *Cook,* 3 Scam. 233; *Bradford* v. *Kimberly,* 3 Johns. Ch. 431; *Fox* v. *Dawson,* 8 Martin, (La.) 94.

As illustrating the same principle we also cite the following cases: *Shelton* v. *Johnson,* 40 Iowa, 84; *Day* v. *Caton,* 119 Mass. 513; *Garrey* v. *Stadler,* 67 Wis. 512; *Phillips* v. *Jones,* 1 A. & E. 333; *Boardman* v. *Ward,* 40 Minn. 399.

There are numerous cases which hold that a plaintiff is entitled to recover in assumpsit even where no contract is claimed to exist, on the principle that the defendant shall not unjustly enrich himself at the plaintiff's expense. This doctrine is founded, as stated by Mr. Justice BRADLEY of the United States Supreme Court, on the maxim that "no one shall be made richer by making another poor." (*Insurance Co.* v. *Stratham,* 93 U. S. 94.) Other cases illustrating this doctrine are: *Exall* v. *Partridge,* 8 T. R. 308; *Tracy* v. *Tallmadge,* 14 N. Y. 162; *Cook* v. *Doggett,* 2 Allen, 439; *Lakeman* v. *Pollard,* 43 Me. 463; *Green* v. *Gilbert,* 21 Wis. 395.

A. W. GREEN, (of counsel,) also for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This cause was before us at a former term. With the opinion then filed (111 Ill. 185) will be found a statement of the facts to that time. Upon the remandment to the circuit court of Cook county for further proceedings in conformity with the views then expressed, a decree was then entered referring the cause to a master to take the evidence and state an account. Before any action was taken by him, a hearing was had before the court and a second decree rendered, dated August 3, 1889, which defined the legal rights of the parties and directed the master to state the account in conformity therewith, according to the facts as he should find them from the evidence. On the coming in of the report, stating separately the account of Rothbarth with the children and his former wife, Mrs. Lehman, exceptions were filed on behalf of all the parties. On argument of these before the court some were overruled and others allowed in

part, the final conclusion reached being a decree in favor of complainants in the original bill (the children) against Rothbarth for $75,409.43, and in his favor against Mrs. Lehman for $7004.58. The master was allowed $3373.65 for his services, which was apportioned between Mrs. Lehman and Rothbarth. From this decree appeals were prayed by and allowed to each of the parties. These appellants having perfected their appeal and assigned errors, appellee files cross-errors.

The question whether or not a freehold is involved, so as to give this court jurisdiction, is raised by counsel for appellants and discussed at considerable length; but opposing counsel do not seem to question the right of this court to hear and determine the cause upon its merits, and in view of what we said on that subject in our former opinion, we are disposed to so treat it without critically examining the question.

Under the errors assigned by appellants it is claimed that the circuit court erred in not declaring a resulting trust in favor of the complainants in the original bill as to certain real estate. We disposed of that question on the former appeal by saying (p. 201): "With respect to the real estate in controversy there is little to be said. While we think the circumstances tend strongly to show that the funds of Mrs. Rothbarth, or of the children, or of perhaps both, were used in paying for the property, we are nevertheless of opinion the evidence, upon the whole, leaves the matter in too much uncertainty to warrant relief in this mode. By requiring appellee to fully account for the estate of Mrs. Lehman as well as that of her children, which he must do, the ends of justice will be sufficiently and more certainly subserved than to establish a resulting trust with respect to this property." No sufficient additional reasons are shown by the present record for changing that conclusion.

The remaining questions raised, both by the assignment of errors on behalf of appellants and cross-errors

by appellee, involve the correctness of the statement of the account between the parties. By its decree of August 3 the court found that in July, 1873, Mrs. Lehman, individually and as administratrix and guardian, delivered to Julius Rosenthal, as her agent and attorney, a large amount of securities and money, which he retained and had the exclusive control and management of until March 25, 1874, when he returned those which remained in his hands to her and her husband, and the latter was ordered to account for the proceeds thereof. It was also found in that decree that Mrs. Lehman, in the winter of 1872, loaned the Fourth Presbyterian Church $10,000 of the funds of the estate, taking two promissory notes therefor,—one for $7500 and the other for $2500,—each bearing ten per cent interest, which were turned over, with other securities, to Rosenthal, as above stated; "that it does not sufficiently appear from the evidence what amount remained at that time unpaid upon said loan; that the sum of $7768.44 was collected by some person on account of said loan, in June, 1884, and deposited in the International Bank to the credit of Marie Rothbarth, and if it shall appear in the accounting before the master that the balance of said loan came into the hands of said Rothbarth, he should be charged with such balance." The master charged Rothbarth with the whole amount of the loan, but the court, in the final decree, held him liable for but $7500. Under the decree the liability of appellee for the balance of the loan over $7768.44 depended upon whether it came into his hands. By that decree it was also found that on August 31, 1874, Mrs. Lehman released her dower in the "Buffalo Brewing property" to Edward Koch for the agreed consideration of $5695, and that Rothbarth has never accounted to her for any moneys he may have received, as her agent, in connection with such sale and release of dower, and that he should be charged with any moneys so received, directly or indirectly, with interest, but if the master shall find he did not receive

any such money, he will examine and report the facts in connection with the same, and the payment or non-payment of the consideration. The master charged appellee with the whole $5695, but the court reduced the amount to $3448. Both parties complain of this ruling, appellants contending the whole amount should have been allowed, and appellee that he is properly chargeable with no part thereof. It is not claimed that he collected any of this money, but he was held liable for a part of it by the court because Koch had conveyed him certain of the property, which he took with knowledge that the dower had not been paid for, the part conveyed to him being to the whole property as $3448 is to the whole consideration, $5695.

In his account appellee charged $3000 paid out as traveling expenses for the children while in Europe, between August, 1873, and February 20, 1874. The court allowed him on this claim $2000. Appellants deny, substantially, their liability for any part of the amount charged.

On the 14th of July, 1874, Mrs. Lehman, then Mrs. Rothbarth, gave her husband a check for $5000, and complainants seek to charge him in this suit with the same. The court found that it was given voluntarily, "as compensation for services in making settlement between the estate of Frederick Lehman, deceased, and Conrad Seipp, and that appellee, Rothbarth, cannot be held to account for said sum," etc. It is denied by appellants that the services for which the court allowed the amount were in fact rendered, and also that he is entitled to compensation therefor even if rendered.

It appears from the report that on March 1, 1877, one John Seba executed certain notes, amounting to $30,000, payable to Mrs. Rothbarth, guardian of the five minor children, secured by deeds of trust on lots 3, 4, 5, etc., and on the 26th of the same month Seba conveyed these lots to appellee by warranty deed, in consideration of $40,000, the grantee assuming, as part of the consideration, the

$30,000 indebtedness. On December 9, 1881, he sold the property for $52,000, subject to the same indebtedness. During the time he owned it he received rents, and paid out money for taxes, insurance, repairs, etc. Appellants claimed before the master and in the court below, that as appellee used the money of the estate in this transaction as his own, and acquired the ownership of the property, he was bound to pay over to the estate all the profits made out of the use of the property and by its sale, but that the complainant had the right to elect whether interest upon the amount so used should be taken or the profits made out of the same, and they stated before the master that they elected to take the profits. The master, however, treated the transaction as a loan of $30,000, and charged the defendant with interest on the same instead of the profits, and his action in that behalf was approved by the court in its final decree. For this alleged error appellants insist the decree below should be reversed. Appellee, contending that he was not liable for any profits realized in the transaction, declined to offer proof as to the amount of his expenditures. It would be impossible, therefore, for us to fix the amount appellants should receive on the basis of profits instead of interest, and if the decree below be reversed on this point a re-reference of the cause to the master will be necessary.

When Rosenthal turned over the securities in his hands as the agent and attorney of Mrs. Lehman, he also transferred to her a cash balance in the International Bank of $11,642.36. The court found in its interlocutory decree of August 3 that shortly thereafter both she and her husband went to the bank and left their signatures, so that each of them could draw upon that account; also that "on the 31st day of March, 1874, the said Marie drew·a check of $4500.27, and on the 4th of April, 1874, one for $300, both of which she should be charged with in the accounting hereinafter directed." But it further found that "if the said Paul, as such agent, checked out any of

said moneys prior to said 15th day of April, 1874, or if he received any drawn out by Marie on her personal checks, he should be charged therewith, and should likewise be credited with any he deposited to said account prior to said 15th day of April, 1874." The master charged appellee with $3175.88 as received by him out of the check for $4500.27, but the court, on exceptions, overruled that allowance, holding him liable for no part of it.

Turning now to the claims made by appellee on his cross-errors, it is first insisted that he was wrongfully charged with certain checks drawn on the International Bank between April 14 and October 10, 1874, both because the interlocutory decree placed the burthen upon him to prove that he did not draw such checks, and because his own positive testimony that he did not draw them was not overcome by other testimony.

In his account against Mrs. Lehman he charged her with about $1000 which he claimed he paid out for her while in Europe, in 1873, in the purchase of certain articles, such as clocks, tables and laces. This claim was disallowed, both by the master and the court.

Certain farm lands belonged to the estate, in which Rothbarth bought the two older children's interests, two-sevenths, and rented the other five-sevenths. While in possession he claimed to have planted trees, dug wells, made fences and other permanent improvements on the same, and in his account against the children he claimed an allowance of five-sevenths of the cost of these improvements, but the court refused to allow the claim.

One Gallagher became indebted to the estate $20,000, by the purchase of four notes of $5000 each, which he had executed to one Walker. These notes bore interest at the rate of ten per cent per annum, payable semi-annually, evidenced by interest coupons. Appellee in his account charged himself with $2250 of interest collected on this loan, but the complainants insisted that he was chargeable with $5500. The master, in his report, which in that

respect was approved by the court, charged him with this latter amount, and appellee now insists that ruling was erroneous.

In June, 1878, appellee joined his wife in Europe, where she had been for some months, and they together returned to Chicago in November following. He sought to charge her with $1800, "her share of the traveling expenses" during the time from June until November 23, 1878. The court allowed $1000 of this charge, but treated it as household expenses, which, as will hereafter appear, was divided equally between the parties, so that he in fact received credit for but $500 of the amount as traveling expenses. He charged each of the children for traveling expenses in Europe, in the year 1876, $298.32. This the court refused to allow, except to the amount of $100 against each of the said children. He also charged two of the children, Ida and Emma, for traveling expenses in the year 1877, the former with 682 marks and the latter with 355 marks. The court, upon the report of the master, refused to allow any part of this claim, and this is also assigned for error.

It appears from the finding of the court below in its decree, that upon the return of the parties from Europe, in March, 1874, there arose a difference between them as to whether or not they should continue to occupy the Lehman residence, the husband objecting thereto upon the ground of the expense, and the wife insisting upon continuing to occupy the same. It is stated in the decree: "The court further finds, that at one time the said Paul was willing to accede to his wife's said wishes upon condition that one-half of the household expenses should be borne by the said Marie and the other half by himself, but it does not clearly show that the said Marie agreed to such proposition, and the court finds that, considering the wealth and income of the respective parties and the circumstances under which the said homestead residence continued to be the residence of the said parties, it would

be equitable that, after deducting the reasonable board and lodging of the respective children, all their expenses of living at and keeping up said homestead residence, including all taxes, assessments, insurance and repairs, from the said 23d of March, 1874, up to the date that said Paul left said residence, shall be divided and borne equally by said Paul and said Marie Rothbarth, share and share alike, each receiving credit for said board and lodging to be charged to said children, respectively, of one-half the amounts so charged to said children." It is insisted by appellee, with much earnestness, that it was unjust and erroneous to thus charge him with household expenses, upon the theory that the evidence shows that he had provided another suitable home for himself and wife, to which she refused to go.

It is finally contended that the account approved by the circuit court is illegal and unjust to appellee, in that it denies him all compensation for services rendered by him in the management and control of the business of the estate.

We have thus endeavored to briefly state the contentions of the respective parties in opposition to the account rendered by the court below. The determination of each of them involves, directly or indirectly, a consideration of conflicting and irreconcilable evidence, many of them depending wholly upon the weight to be given to the conflicting evidence of Mrs. Lehman and appellee. It is well settled that this court will not disturb the finding of the court below, in a case of this kind, merely because it might, as an original proposition, have found the facts as to one or more of the items in the account differently. The language used by Mr. Justice BREESE in *Ford* v. *Ford Manf. Co.* 73 Ill. 50, is peculiarly applicable to this case, where he says: "The facts have been considered and weighed by the court below. They have undergone close scrutiny, and it cannot be expected that an appellate court will take up each item of account in dispute and

endeavor to rectify every supposed error attributed to the court in its finding." Nevertheless, we have examined the several points of contention raised and discussed by counsel, and are not disposed to so far differ with the finding of the court below as to in any way modify its decree.    Still, some of these questions may properly be briefly noticed.

We are satisfied that the interlocutory decree of August 3 fairly pursues the view of the case taken by this court in its former opinion.    In so far as it casts the burden upon the defendant to account for the assets of the estate no just ground for complaint exists.    Having taken upon himself the duty of managing and controlling the estate, he occupied to it the relation of trustee, and it was his duty to so deal with the assets and so keep his accounts as that he could readily and faithfully account for his management and control of the same.    Therefore no hardship is imposed upon him by requiring him to show what disposition he made of those assets, rather than to cast that burden upon his *cestuis que trust.*

The contention of appellants that the court below should have compelled appellee to repay to the estate the $5000 check given, as the court found, for services rendered in selling property to Seipp, cannot be sustained, as we think, not because their view of the law is wrong, but because the evidence satisfactorily shows that the services were rendered prior to the marriage of appellee and Mrs. Lehman, and prior to his becoming in any way liable to account to her as general agent or trustee in the management of the estate's business.

As to the right of appellants to treat the transaction above mentioned, between appellee and Seba, as a purchase of the property by him with the estate's money, and therefore their right to elect to compel him to account for the profits rather than interest on the money invested, we think the evidence does show that the loan of $30,000 was in fact to himself, and not to Seba.    But it cannot

be said that the purchase was with the money of the estate. The property was 'purchased for $40,000. At most but $30,000 of the estate's money was used in paying for it, and that, on the face of the transaction, was a loan. By requiring appellee to repay that money, with compound interest, we think substantial justice is done between the parties.

The other claims made by appellants are so clearly dependent upon the facts in the case that nothing more need be said · in regard to them. · The same disposition may also be made of each of the contentions of appellee under the cross-errors, except, perhaps, the objections to the charge against him of one-half of the household expenses and the refusal to allow him compensation for his services. The evidence does tend to show, and the court below seems to have based its finding that he should be held liable for half the household expenses upon the theory, that an agreement to that effect, at least impliedly, existed between the parties. But even if it were otherwise, we are not prepared to say that under the evidence in this record it was inequitable to require him to bear one-half of this expense. Ordinarily it would have been his duty to provide for the household expenses himself, and while he would in that case undoubtedly have had the right to say where and how the family should live, offering to provide a suitable residence therefor, we do not think that by the proof made he showed that he had so provided, and in good faith desired to provide, another residence suitable to the degree and condition of himself and family in society. He did, though objecting to the expenses and extravagant mode of living in the old homestead, continue to live there, at least at intervals, as one of the family, and we see no reason why he should have been allowed to do so wholly at the expense of his wife.

As to the ruling of the court below on appellee's right to compensation, we entertain no doubt that it is fully sustained by the law and the facts in this case. We do

not deem it necessary to put this conclusion upon the recognized doctrine in this State that a trustee is entitled to no allowance or compensation for his time and trouble in the execution of a trust, in the absence of an express contract for such compensation. It is well settled that a trustee or agent can recover no fees or commissions for his services unless he has faithfully discharged his duties toward his principal or *cestui que trust.* (*Hoyt* v. *Shipherd*, 70 Ill. 309; *Brannan* v. *Strauss*, 75 id. 234.) "If he has neglected his duties, exercised bad faith in the conduct of his trust, or committed a breach of his obligation in any way, he forfeits his right to a compensation." (27 Am. & Eng. Ency. of Law, 187, and authorities cited in note 3.) This whole case grows out of the fact that appellee failed and neglected, and in some instances positively refused, to discharge a plain duty assumed by him toward this estate; and this is made so clear from what we said in disposing of the case when it was before us on the former hearing, that it is only necessary now to refer to that opinion. Under such circumstances we regard it too clear for argument that he was in no position to demand pay for doing that which he was compelled to do, and which he refused and neglected to properly do until compelled.

The objection made by appellee to the allowance to the master we think should be also overruled. No sufficient reason is shown for interfering with the estimate of this service made by the court below.

The decree of the circuit court will be affirmed.

*Decree affirmed.*