**SHELL OIL CO. v. DYE et al.**

No. 8162.

Circuit Court of Appeals, Seventh Circuit.
April 30, 1943.

Dennis E. Woodside, of St. Louis, Mo., and John R. Kane, of Harrisburg, Ill., for appellants.

Craig Van Meter, of Mattoon, Ill., F. C. Love, of Oklahoma City, Okl., and J. T. Lamb and James P. Mize, both of Centralia, Ill., for appellee.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from a decree entered by the District Court June 19, 1942, and an order entered June 11, 1942, in favor of plaintiff, in an action seeking to restrain defendants from interfering with plaintiff in drilling and exploring for oil and gas, and to restrain defendants from drilling or attempting to drill or produce oil and gas from a certain described ten acre tract of land situated in Franklin County, Illinois, and for other relief. Both plaintiff and defendants claim to be the owners of a valid oil and gas lease covering the tract in suit.

On July 24, 1905, the tract was owned in fee simple by W. D. Dunning, who on that date, together with his wife, executed two warranty deeds of conveyance, the first to Benton Coal Company, an Illinois corporation, and the second to T. M. McKemie (sometimes designated as Thomas M. McKemie). The former conveyed "all the coal and other minerals in, on and under (the tract in suit)." This conveyance contained certain provisions, such as the right to mine and remove said coal and other minerals without liability for damage to the surface, the right to make underground passages or entries to and from adjacent mines, the right of the grantee to take and use as much of the surface as deemed necessary for the purpose of erecting, maintaining and operating hoisting, air, pumping and escape shafts, and with the right for any railroad necessary or required to carry said coal and other minerals to market, the surface so taken to be paid for at the rate of $50 per acre.

The second deed by Dunning and wife conveyed to T. M. McKemie the following described real estate (the tract in suit), and contained the following provision: "This deed is made subject to a deed of

same date, conveying coal and mineral rights with surface privileges to the Benton Coal Company." Plaintiff's primary claim to title is predicated upon mesne conveyances of "all the coal and other minerals" conveyed to the Benton Coal Company. There appears no reason to describe these various conveyances. Defendants claim title by mesne conveyances of the property conveyed to Thomas M. McKemie. As will hereafter appear, it seems material to describe these conveyances.

Thomas M. McKemie and his wife Lou on October 7, 1921, conveyed and quit claimed to Lou McKemie the tract in suit, subject "to all deeds of conveyances heretofore made conveying the coal, oil and gas and other minerals underlying any or all of the above described pieces of real estate." On December 6, 1927, Lou McKemie and Thomas M. McKemie, her husband, conveyed the same tract to Charles McKemie, their son, which conveyance contained the following provision: "And excepting from all lands above conveyed the coal, oil, gas and other minerals, together with certain mining rights and surface privileges as heretofore conveyed." Lou McKemie died in 1936. On September 19, 1939, Charles F. McKemie and his wife made an agreement to convey said tract to Myrlen Dye (one of the defendants), which agreement recited: "Subject, however, to a prior conveyance of the coal, etc., underlying same as set forth in prior conveyances thereof, together with surface privileges as contained in said deed." On April 24, 1941, Charles F. McKemie and his wife, in conformity with said agreement, conveyed the tract to Myrlen Dye and Medda Dye (another defendant), as husband and wife, which conveyance contained the same provision as set forth in the agreement to convey. On June 27, 1940, Thomas M. McKemie and all the children of Lou McKemie, deceased, and their respective spouses, leased the tract in suit for oil and gas drilling and production to E. S. Adkins, which lease was subsequently assigned to plaintiff. On April 25, 1941, Myrlen Dye and Medda Dye, his wife, leased the oil and gas underlying said tract to defendants Dee M. Margrave and Charley Pollack, who subsequently assigned various interests in the oil and gas to other defendants in the suit.

Plaintiff's contention, designated as its primary claim to title and sustained by the lower court, is that its predecessor, Benton Coal Company, by reason of the conveyance of July 24, 1905, acquired title to the oil and gas. On the other hand, defendants contend to the contrary and urge that title to the oil and gas remained in Dunning and passed by the latter's conveyance to Thomas M. McKemie. The solution of these opposing contentions depends entirely upon the construction to be placed upon the grant, "all the coal and other minerals in, on and under (the tract in suit)." More specifically, did the words "other minerals" include the oil?

There are two reasons why we have seen fit to set forth the various mesne conveyances from Dunning to defendants: (1) It is urged by plaintiff that Thomas M. McKemie, by making his conveyance of October 7, 1921, to Lou McKemie subject "to all deeds of conveyances heretofore made conveying the coal, oil, and gas and other minerals," recognized that such estate did not pass by the conveyance of July 24, 1905, from Dunning to him but that it passed to the Benton Coal Company by Dunning's deed of the same date containing the grant "all the coal and other minerals"; and (2) plaintiff claims title not only by reason of Dunning's grant to the Benton Coal Company but by reason of the oil and gas lease of June 27, 1940, by Thomas M. McKemie and the children of Lou McKemie, deceased, to E. S. Adkins, later assigned to plaintiff. In this connection, it is argued that defendants, being subsequent grantees and privies in title with Charles McKemie, grantee in the deed from Thomas M. McKemie and Lou McKemie, are estopped to dispute the grant in the deed to Charles McKemie which excepted therefrom "the coal, oil and gas and other minerals."

■ Defendants moved for dismissal on jurisdictional grounds, on the theory that the Supreme Court of Illinois had not decided whether a grant of "coal and other minerals" included oil. Predicated upon this premise, it is contended that under the pronouncement of Thompson v. Magnolia Petroleum Co. et al., 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876, the lower court was not at liberty to try the cause and should have dismissed the complaint so that the parties could have litigated the controversy in the state courts. We think this contention is not tenable. While it is true the Supreme Court of Illinois has not construed a conveyance containing the exact verbiage

as that here involved, it has construed words of a grant so closely and directly related that there is left little, if any, room for doubt as to the law of Illinois. Furthermore, we do not think the pronouncement in the Magnolia case means that a federal court should refuse to assume jurisdiction merely because a question is presented which varies only slightly from that decided by a state court.

On the merits of the motion to dismiss the complaint, we need not enter upon an extended discussion. Any doubt which has heretofore existed in Illinois as to the scope of a grant which includes "mineral" has been laid to rest by two recent opinions of the Supreme Court, namely, Jilek et al. v. Chicago, Wilmington & Franklin Coal Company, 382 Ill. 241, 47 N.E.2d 96, and Shell Oil Co., Inc., et al. v. Moore et al., Ill.Sup., 48 N.E.2d 400, decided March 16, 1943 (not yet published [in State Reports]). Defendants' effort to distinguish the Jilek case is not impressive. The Moore case was decided subsequent to the filing of the briefs in the instant case. It is true the facts in neither of those cases are precisely the same as those here involved. Both opinions, however, deal with numerous questions concerning conveyances as they relate to surface and mineral rights. It would unduly prolong this opinion and perhaps serve no useful purpose to discuss or quote at length from the pronouncements of the Illinois court. It is sufficient, we think, to refer to certain holdings which we regard as decisive of the construction which we must place upon the grant, "all the coal and other minerals."

■ In the Jilek case, [382 Ill. 241, 47 N.E.2d 98], the court decided, "Oil and gas, by the overwhelming weight of authority, are minerals [citing cases]" and that they constitute an estate separate from that of the surface when included in a grant which characterizes them as a mineral. This pronouncement was reaffirmed in the Moore case and a rule of interpretation invoked to the effect that the intention of the parties is to be gathered from the entire instrument and "that every word and clause within the instrument should be construed, and if possible, given effect." Also in the Moore case, the court had before it a deed which reserved "the right to mine and remove all the coal and other minerals," and held that the oil and gas were thereby reserved. This holding would be wholly decisive of the instant question,

except in that case there was other language in the deed which supported the construction which the court gave to the reserving language. However, a study of the opinion makes it certain, so we think, that the court would have reached the same conclusion if there had been nothing before it except the reservation.

■ As bearing upon the intention of the parties, defendants emphasize that certain easements relating to the mining of coal were enumerated in the deed, without including comparable easements for the drilling and operation of oil wells. As pointed out in the Jilek case, however, concerning similar specified easements relative to the mining of coal, the grant carried certain implied easements and those enumerated were merely in addition thereto.

■ Defendants also attempt to invoke the doctrine of "ejusdem generis" and cite a number of Illinois cases in its support. It is argued that "other minerals" should be construed to mean minerals of like kind as coal. It is pointed out that coal is a solid mineral, fixed and confined to one place, while oil is not solid and not so fixed and confined. The fallacy of this argument is that it is predicated upon a single physical characteristic to the exclusion of all others. On the other hand, coal and oil have some characteristics in common. They are each primarily used for fuel. From a chemical standpoint, they are quite similar, each being a hydrocarbon. Furthermore, there is no enumeration of particular minerals in the granting clause involved, from which the general term "and all other minerals" could draw its character. In other words, the naming of one particular object—coal—is not an enumeration. In Luse v. Boatman, Tex.Civ.App., 217 S.W. 1096, the court considered the same contention as is made here, on facts precisely the same, and properly held, so we think, that the rule sought to be invoked was without application.

■ As bearing upon the matter of intent, defendants suggest that the Benton Coal Company (grantee in the deed) was a corporation which by the law of the state was without authority to purchase oil or gas. If such be the fact, it is not disclosed by the deed, and we doubt its relevancy as concerns the intention of the parties. If matters extraneous to the grant are to be considered, it seems that the construction placed upon the words "and other mineral rights" by Thomas M. McKemie·

is entitled to some weight. As heretofore disclosed, it is through McKemie that defendants claim title. He was the grantee in the second deed executed by Dunning, which deed was made subject to a deed "conveying coal and mineral rights with surface privileges to the Benton Coal Company." When McKemie came to convey this property, it was done subject to the "coal, oil and gas and other minerals." It would thus appear that McKemie gave recognition to the fact that the coal, oil and gas had theretofore been conveyed to the Benton Coal Company.

Whatever may be said, however, relative to the merits of the argument pro and con concerning the intention of the parties, the basic and controlling fact remains that oil has been adjudicated by the Supreme Court of Illinois to be a mineral, and we see no escape from the conclusion that it was included in the granting words "and other minerals." To hold otherwise is either to eliminate such words from the grant or to hold that they are meaningless and without effect. This we have no right to do.

Furthermore, we are of the view that plaintiff is entitled to prevail, irrespective of the construction placed upon the grant to the Benton Coal Company. As already suggested, defendants claim title through the grant of Dunning to Thomas M. McKemie. Subsequently in the chain of title upon which defendants rely, Thomas M. McKemie, in conveying the premises to Charles McKemie, excepted the "coal, oil and gas and other minerals." It is difficult to perceive how Charles McKemie acquired any title to the oil and gas, and the defendants as subsequent grantees are in no better position. Furthermore, Thomas M. McKemie subsequently leased the premises in question for oil and gas drilling to one Adkins, who assigned the lease to plaintiff. If perchance Thomas M. McKemie acquired title to the oil and gas from the original grant to him, and we have held to the contrary, yet when he reconveyed the property he reserved the oil and gas and gave to plaintiff's predecessor a lease upon the same. Under such circumstances, we think defendants are estopped to claim title to the oil. Cobb v. Oldfield et al., 151 Ill. 540, 38 N.E. 142, 42 Am.St.Rep. 263; Orthwein v. Thomas et al., 127 Ill. 554, 561, 21 N.E. 430, 4 L.R.A. 434, 11 Am.St.Rep. 159.

So far, our discussion has been confined to what may be termed the merits of the case, that is, the issue of title. Having reached the conclusion that the court below correctly decided this issue, it becomes necessary to discuss or at any rate refer to certain other issues arising from what is claimed to have been an erroneous accounting which the court made between the parties. As already stated, plaintiff filed its complaint on June 7, 1941, and on the same date defendants had employed a drilling company and the drilling of a well was commenced. Plaintiff made application for a preliminary injunction, and a hearing was had thereon June 13, 1941. At that time, the well had been drilled to a depth of 1,700 feet. At the conclusion of the hearing, the court entered its order permitting defendants to complete, equip and operate the well, pending determination of the title controversy. By this order, the court imposed certain express conditions, including (1) defendants were required to deposit with the clerk of the court the sale proceeds of all oil produced from the well, (2) to furnish a bond conditioned upon the "drilling, completion and operation of said well in a good and workmanlike manner," (3) permitting reimbursement out of said funds upon order of the court, after notice and full hearing, for reasonable costs and expenses incurred after June 13, 1941, and (4) the court reserved until the matter of title was decided the question as to whether defendants should be reimbursed for costs and expenses incurred prior to June 13, 1941.

It appears that the defendant Kane was largely, if not entirely, the manager of the venture, both in the drilling and operating of the well. It also appears that he bore the burden of financing the venture. Numerous petitions were filed in the court by Kane, totaling some $32,000, for allowance out of the proceeds realized from the sale of oil to cover alleged cost, expenses and service in drilling, equipping and operating the well. Plaintiff contested defendants' right to reimbursement from the proceeds, alleging that the amounts claimed were excessive, that the well had not been equipped and operated in a "good and workmanlike" manner, in compliance with the court's order and the bond required of defendants, and that none of the costs incurred prior to June 13, 1941 should be allowed for the reason that they were incurred as trespassers. There was allowed on the claims filed by Kane $17,611.36, and disallowed the remainder thereof.

A discussion of the numerous disallowed items of which defendants complain would serve no good purpose. It is sufficient, so we think, to state that we have considered the argument presented as to each and are of the view that the court's action should be sustained. Furthermore, the general rule in Illinois, ofttimes stated, is that an accounting decree will not be disturbed by an appellate court unless clearly erroneous. Lehman v. Rothbarth, 159 Ill. 270, 42 N.E. 777; Williams v. Lindblom, 163 Ill. 346, 45 N.E. 245.

We will, however, refer to a few of the more important items which the court disallowed. One of such items is the claim for $3,825 paid the drilling company in accordance with a contract between the defendants and such company for the drilling of the first 1,700 feet of the well. (This was the drilling which took place prior to the court's order of June 13, 1941, after which the drilling was continued under the court's order.) As heretofore stated, the drilling was commenced on the same date the complaint was filed and subsequent to a time when defendants had been served with a written notice of plaintiff's title to the oil and gas rights in the property in suit. Furthermore, the conveyances in plaintiff's chain of title were all of record prior to that date. Thus, prior to the expenditure of any money on this well, defendants had both actual and constructive notice of plaintiff's title. Under such circumstances, defendants proceeded at their own peril and are not entitled to recover for the expenses thus incurred. Bruner et al. v. Hicks et al., 230 Ill. 536, 82 N.E. 888, 120 Am.St.Rep. 332; Zeigler et al. v. Brenneman et al., 237 Ill. 15, 86 N.E. 597; Greer v. Carter Oil Co., 373 Ill. 168, 176, 25 N.E.2d 805.

A class of claims based upon the cost of certain material and equipment purchased and used during the time the well was being drilled and operated under the court's order, and the expense of hauling and installing such material and equipment, were disallowed on the ground in some instances that such expenditures were not reasonable, and in other instances that the work was not performed in a good and workmanlike manner. The validity of such items was dependent upon the evidence submitted. The court made findings unfavorable to defendants. Such findings are substantially supported and must be accepted.

Closely allied with the class of claims to which we have just referred was the allowance of damages in the amount of $2,000 against the defendants for mismanagement and for noncompliance with the court's order. This amount was ordered as a set-off against the claims allowed the defendant Kane. It no doubt is true, as urged by defendants, that plaintiff could have maintained an action for damages for breach of the bond given by defendants in conformity with the court's order, but it does not follow that this was an exclusive remedy and we perceive no reason why the court could not properly adjudicate the question in the instant proceedings. The court was sitting in equity and was authorized, if not required, to determine all disputes incidental to the main controversy. United Artists Corp. v. Thompson, 339 Ill. 595, 171 N.E. 742; Rosehill Cemetery Co. v. City of Chicago, 352 Ill. 11, 185 N.E. 170, 87 A.L.R. 742. Neither do we think there is any merit to the argument that the set-off was improperly allowed against Kane. No other defendant and no other creditor (with certain minor exceptions) had any claim against the fund in the custody of the court. All the operations upon which damages were predicated were under the direct control and supervision of Kane. Certainly he was liable, and this irrespective of whether there was liability on the part of other defendants.

Defendants' motion to assess a portion of the costs of preparing and printing the record on appeal is denied. We find no reversible error in the decree appealed from and it is, therefore, affirmed.