**BANKERS LIFE COMPANY,**
Plaintiff-Appellee,
v.
**INTERNATIONAL TELEPHONE AND TELEGRAPH CORPORATION,**
Defendant-Appellant.
No. 11821.

United States Court of Appeals
Seventh Circuit.
Dec. 27, 1956.

S. Ashley Guthrie, Tenney, Sherman, Bentley & Guthrie, Chicago, Ill., for defendant-appellant, T. J. Kerwin, Chicago, Ill., of counsel.

James J. Doheny, John P. Sullivan, Chicago, Ill., for appellee.

Before DUFFY, Chief Judge, and MAJOR and SWAIM, Circuit Judges.

MAJOR, Circuit Judge.

The defendant, International Telephone and Telegraph Corporation (hereinafter called International), appeals from a judgment entered in the District Court against it in favor of the plaintiff, Bankers Life Company, in the amount of $15,143.72, being the amount of premium alleged to be due by reason of the prepayment of a loan owed to plaintiff by defendant's predecessor, Kellogg Switchboard & Supply Company.

The material facts were stipulated as follows: On or about November 1, 1948, Kellogg Switchboard & Supply Company, an Illinois corporation (hereinafter called Illinois Kellogg), executed its promissory note for $900,000, payable to plaintiff, Bankers Life Company (hereinafter called Bankers Life). At the same time Illinois Kellogg executed another note for $600,000, payable to the First National Bank of Chicago. These

notes evidenced an indebtedness by Illinois Kellogg on account of loans made to it pursuant to the provisions of a Term Loan Agreement executed in connection with the notes.

Kellogg Switchboard & Supply Company, a Delaware corporation (hereinafter called Delaware Kellogg), subsequent to the execution of the notes and Term Loan Agreement acquired all of the assets and assumed all of the obligations of Illinois Kellogg. By amendment to the Term Loan Agreement dated March 5, 1952, Delaware Kellogg was substituted as obligor in place of Illinois Kellogg. The defendant International at all times owned all of the capital stock of Delaware Kellogg, and Delaware Kellogg was in July 1953 merged with International. Since the merger International stands in the place of Delaware Kellogg and has all of the rights and obligations of Delaware Kellogg and Illinois Kellogg under the Term Loan Agreement and amendments thereto.

The $900,000 note of Illinois Kellogg payable to plaintiff was dated November 1, 1948, and bore interest at the rate of 4½% per annum, and the interest was payable semi-annually on May 1 and November 1 of each year. The principal was payable in installments of $150,000 each on November 1, 1953, 1954, 1955, 1956, 1957 and 1958. The Term Loan Agreement contains a provision entitled "Redemption and Prepayment" by which the obligor was accorded the privilege of prepaying the notes in whole or in part on any regular interest payment date, upon thirty days' prior written notice of the principal amount, plus accrued interest. The provision contains an exception around which the instant controversy revolves, as follows: " * * * except that if such prepayment is being made from or with funds derived from borrowings and refinancing or from sources used in anticipation of borrowings or refinancing, such prepayment shall be made by the payment of the principal amount being prepaid plus accrued interest thereon to the date of the prepayment, together with a premium

upon the principal amount being prepaid of one-half of one percent for each unexpired year or fraction thereof from the date of prepayment to the maturity date of each installment outstanding."

Pursuant to the provisions of the Term Loan Agreement, either Illinois Kellogg or its successor, Delaware Kellogg, paid the plaintiff on or before May 1, 1952, $201,663.24 on the principal, leaving a principal balance due of $698,336.76. On or about September 26, 1952, Delaware Kellogg gave Bankers Life written notice of its intention to prepay the balance unpaid on said note on November 1, 1952, the next regular interest payment date, in accordance with the provisions of the Term Loan Agreement. Pursuant to such notice Delaware Kellogg on or about October 30, 1952, paid to plaintiff $714,049.34, in full payment of the principal balance then remaining unpaid and $15,712.57 interest on such balance to November 1, 1952. By agreement of the parties the question as to whether Delaware Kellogg was liable to pay an additional amount as premium for prepayment was left for future determination.

The funds from which this prepayment was made were derived from the proceeds of a sale on October 29, 1952, by Delaware Kellogg to International at $100 per share of 10,000 shares of capital stock of Delaware Kellogg previously authorized but unissued. The only question presented by this appeal is whether the sale of 10,000 shares of stock at $100 per share by Delaware Kellogg to its parent corporation, International, is within the purview of "borrowings or refinancing" as set forth in the exception to the Term Loan Agreement.

Both parties agree that the key word in the controversy is "refinancing," and that the prepayment by Delaware Kellogg by virtue of the sale of its stock to International does not constitute "borrowings" within the meaning of the Term Loan Agreement. International contends the use of the alternative words, "borrowings and refinancing," limits the meaning of the word "refinanc-

ing" to a transaction in the nature of "borrowings"; in other words, refinancing as used in the Term Loan Agreement means a transaction similar in kind or effect to the original borrowing from Bankers Life. In support of this argument International urges that under the rule of ejusdem generis the word "refinancing" is a general word following a specific word, "borrowings," and, therefore, the general word is to be construed to apply only to things similar to those designated by the specific word.

International cites a number of cases wherein this rule of construction has been utilized, including Bullman v. City of Chicago, 367 Ill. 217, 10 N.E.2d 961, Spalding v. People, 172 Ill. 40, 49 N.E. 993, and Woods v. Great American Insurance Co., 265 Ill.App. 20. A study of the reasoning, and more particularly the facts involved in those cases, reveals that they are of little benefit to defendant's contention. An Illinois case more in point is Gage v. Cameron, 212 Ill. 146, at page 158, 72 N.E. 204, at page 209, wherein the court in discussing the rule stated: "In the first place, in defining the meaning of the maxim 'ejusdem generis,' and applying it to the construction of statutes and contracts, the cases decided by this court are nearly all cases where the word 'other' is used to qualify the general terms which follow the specific designations," and "If the maxim ejusdem generis is to be strictly applied in the present case, then the general words * * * are meaningless, and nothing but surplusage." This court, in Shell Oil Co. v. Dye, 7 Cir., 135 F.2d 365, 366, had before it the meaning of the words "coal and other minerals" as contained in a deed of conveyance. It was argued that "other minerals" should be construed to mean minerals of like kind as coal inasmuch as they possessed numerous characteristics in common. This court rejected the interpretation thus sought and in doing so stated, among other things, at page 368, " * * * there is no enumeration of particular minerals in the granting clause involved, from which the general term 'and all other minerals' could draw its character. In other words, the naming of one particular object—coal—is not an enumeration." Thus, we held that the rule of ejusdem generis was without application.

■■■■ A fundamental rule of construction is that a court must give effect to every word or term employed by the parties and reject none as meaningless or surplusage in arriving at the intention of the contracting parties. Mittel v. Karl, 133 Ill. 65, 68, 24 N.E. 553, 8 L.R.A. 655. See also Shell Oil Co. v. Dye, supra, 135 F.2d at pages 366, 368. This rule when applicable, as we think it is in the instant situation, eliminates any assistance which might otherwise be derived from ejusdem generis. In Webster's New International Dictionary, "refinancing" is defined as meaning "to finance again or renew; to reorganize the finances." Application of this definition leaves little, if any, basis for the view that the sale of stock by Delaware Kellogg was other than a financing again or a financing anew of its obligation. Certainly some connotation must be accorded the term "refinancing" other than its restriction to the term "borrowings." Otherwise the term is meaningless or surplusage, as some of the cases state. There is no reasonable basis for the conclusion that the parties by use of the term intended such a result. The capital stock of Delaware Kellogg was utilized by it as a means of obtaining finances for the payment of its obligation, and when its obligation was thus discharged, it is our view that it had undergone a "refinancing" within the scope of the Term Loan Agreement. On this issue the fact that the stock was sold to and the funds derived from its parent corporation is immaterial.

The views thus expressed make it unnecessary to discuss other contentions advanced by International.

The judgment is

Affirmed.