(No. 34491.—

KATE B. NANCE *et al.*, Appellants, *vs.* DONK BROTHERS COAL & COKE COMPANY *et al.*, Appellees.

*Opinion filed January 24, 1958—Rehearing denied April 21, 1958.*

DAILY, BRISTOW, KLINGBIEL, and HOUSE, JJ., specially concurring.

L. C. COMBE, of Greenville, for appellants.

WALKER & WILLIAM, of East St. Louis, for appellees.

A. LEONARD ANDERSON, of Effingham, HOWARD L. BROCKMAN and DONOVAN D. McCARTY, both of Olney, CRAIG & CRAIG, of Mt. Vernon, TOM E. GRACE and JOHN D. KNODELL, JR., both of Mattoon, A. K. RANDOLPH, of Chicago, and WHAM & WHAM, of Centralia, for Illinois Oil and Gas Association, *amicus curiae*.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

This case involves the legal sufficiency of a complaint which seeks the construction or reformation of two deeds to adjoining tracts of land in Bond County. The basic question is whether or not the deeds conveyed the underlying oil and gas and the right of access to it through the surface of the land. The circuit court dismissed the complaint on the ground that it did not state a cause of action, and entered a decree for the defendant. The plaintiffs appeal directly to this court. A freehold is involved.

Theodore Rassieur is the grantee in each of the deeds, which are identical except as to the grantors and the description of the land involved. Each deed was on a printed form captioned, "Warranty Deed to Coal and Mining Rights," and each conveyed "All coal and other mineral under the surface of the following described tract of land: * * * together with the right to mine and remove said coal and other mineral and the right to conduct mining operations under the surface of said tract of land therefor, and the right to use all rooms, entries and mining ways at coal depth under the surface of said tract of land as and for mining ways, to and from beds of coal or other mineral in other lands." The words "at coal depth" were interlined with a typewriter in each of the printed deeds.

One of the plaintiffs is Kate B. Nance, who, with her husband, now deceased, executed one of the deeds on June 15, 1907. She alleges that she is the owner of one of the tracts, subject to the rights conveyed to Rassieur. The other plaintiffs are Lee Nance, Thomas Nance, Glenn M. Nance, and their respective wives. They allege that they are the successors in title to Nancy A. Brown, who executed the other deed on September 28, 1907, and that they are the owners of the tract that she conveyed, subject to the rights conveyed to Rassieur. On March 29, 1911, Theodore Rassieur and his wife by quitclaim deed conveyed to the defendant, Donk Brothers Coal & Coke Company, the rights acquired under the two deeds. The quitclaim deed was identical with the other two deeds, except that it omitted the words "at coal depth."

The complaint is in five counts. Counts 1 and 3 are filed on behalf of Kate B. Nance, and counts 2 and 4 on behalf of the other plaintiffs. Count 5 is filed on behalf of all of the plaintiffs. It includes many of the allegations of the earlier counts, and it makes additional allegations. Defendant rightly concedes that although the deeds were executed by different persons, on different dates and related to different tracts of land, the joinder of plaintiffs and of causes of action is proper under section 23 of the Civil Practice Act. (Ill. Rev. Stat. 1957, chap. 110, par. 23.) Defendant contends, however, that count 5 is formally defective because section 33 of the act provides that "Each separate claim or cause of action upon which a separate recovery might be had shall be stated in a separate count * * *." (Ill. Rev. Stat. 1957, chap. 110, par. 33(2).) This contention overlooks the fact that steps were taken at the outset, in the rules adopted by this court when the Civil Practice Act became effective, to prevent the importation into equitable actions of the common-law practice of pleading by counts. To that end Rule 10 expressly provides that a single equitable cause of action "shall be

pleaded without being set forth in separate counts and without the use of the term 'count;' * * *." (Ill. Rev. Stat. 1957, chap. 110, par. 101.10.) The plaintiffs may have erred under Rule 10 by labeling the divisions of their complaint as "counts." They did not err by failing to divide their count 5 into further counts.

The complaint alleges: The defendant, Donk Brothers Coal & Coke Company, was incorporated in 1899. Theodore Rassieur was one of the five principal shareholders and directors of the company. In the years 1907 to 1911, inclusive, and for some time thereafter, Rassieur and other agents of the company solicited and obtained a large number of options for the purchase of coal rights under lands located in two townships in Bond County, including options covering the two tracts here involved, for the purpose of testing the supply of coal thereunder, and, if the supply was satisfactory, mining and producing the coal therefrom through shafts located on other lands than plaintiffs' property. The company's agents represented to Kate B. Nance and to Nancy A. Brown, and to other land owners in the vicinity, that the company desired to obtain only the ownership of the coal underlying the lands and the right to mine and remove it therefrom by means of underground passageways.

Theodore Rassieur executed a "Notice of Acceptance of Coal Rights Under Option" dated June 6, 1907, and directed to Nancy A. Brown, which stated:

"You are hereby further notified that I accept said coal and mining rights in said lands under and pursuant to the terms of said option, and you will please proceed at once with reference to abstract and deed accordingly.

"In response to your inquiry regarding the phrase 'other minerals' it is my intention to buy only the coal and such other minerals as may be mined with coal at coal depth."

As the result of the solicitations and representations of defendant's agents the then owners made their deeds con-

veying to Rassieur certain coal and mining rights under the lands, and in order to make definite the intention of the parties to the deeds, that no rights to the surface or to anything below coal depth were being conveyed, the words "at coal depth" were interlined in the original deeds.

It is alleged that during the period from 1900 to 1911 and for many years thereafter, the southern half of Illinois, including Bond County, was recognized as one of the great coal mining areas of the United States, and that coal mining was then the predominant industry in this section of the State; that during the same period, the presence of oil and gas in Bond County was unknown, and was not within the contemplation or consciousness of the people of the county, and that oil and gas were not considered to be within the term "mineral" or "minerals," as the terms were then used by them. It is also alleged that the grantors did not intend to sell or the grantees to buy the oil and gas underlying the land, or the right to drill for and recover said oil and gas.

It is next alleged that the deeds to the coal rights were prepared by the grantee and that the form of deed used in the two conveyances here involved was used when the grantee's rights were to be confined to coal depth and were not to include any right to the surface or to anything below coal depth. When it was intended to convey to the coal company the right to use the surface of the land in its mining operations the grantee prepared the deed to contain the words "enter upon the surface of" or words of the same import. The present deeds are alleged to have been intended to convey only such coal or other mineral as could be mined and removed by means of underground ways from shafts on other lands.

In the alternative, it is alleged that when these deeds were executed a custom existed in Bond County whereby the words "coal and other mineral" were used as a protection to the purchaser of coal rights against claims of un-

lawful taking of other mineral substances while mining coal, and with the intention of transferring to the grantee only such mineral substances as formed a part of, or were found lying with, the coal conveyed, and that the grantors in the two deeds involved here intended to convey, and the grantee to acquire, only the coal and such mineral substances as formed a part of, or were found lying with, the coal in place so sold and acquired under the deeds.

The plaintiffs pray for a decree adjudging that the coal company has no right or title to the oil and gas under the land, no right to drill for or attempt to recover it, and no right to enter upon the surface of the land for any purpose; removing any clouds upon the titles of the plaintiffs resulting from the deeds under which the defendants claim; adjudging that the plaintiffs are the owners of all oil and gas under the land and of the right to explore, drill for and produce said oil and gas; permanently enjoining the defendant and its successors and assigns from asserting any right to take the oil or gas under the land and from interfering with the plaintiffs' possession of the lands and their rights to the oil and gas thereunder.

In construing the deeds we start with the proposition that the purpose of construction is, of course, to arrive at the intention of the parties. (*Magnolia Petroleum Co. v. West,* 374 Ill. 516; *Haughn v. Haughn,* 296 Ill. 305.) To that end all of the words used in the conveyance are to be taken into account, and effect is to be given to the instrument as a whole. (*Miller v. Ridgley,* 2 Ill.2d 223; *Shell Oil Co. v. Moore,* 382 Ill. 556.) As a matter of grammar, the phrase "all coal and other mineral" means "all coal and all other mineral." But the deeds here involved contain more than that phrase. They continue, "together with the right to mine and remove said coal and other mineral and the right to conduct mining operations under the surface of said tract of land therefor, and the

right to use all rooms, entries and mining ways at coal depth under the surface of said tract of land as and for mining ways, to and from beds of coal or other mineral in other lands."

The defendant reads this latter portion of the conveyance as granting three rights, the first being the right to mine and remove the coal and other mineral, the second being the right "to conduct mining operations under the surface of said tract of land therefor," and the third being the right to use rooms, entries and mining ways at coal depth to and from other lands. Bearing in mind the punctuation of this portion of the deed, it appears at least as likely that only two rights were intended:—the first being the right to mine and remove the coal and other mineral and for that purpose to conduct mining operations under the surface of the land, and the second being the right to use rooms, entries and mining ways at coal depth to and from other lands.

The defendant justifies the second right that it contends was granted by the conveyance in the following terms: "The second right granted is to conduct mining operations under the surface of said tracts of land therefor. The word 'therefor' refers to coal and other mineral mentioned in the grant. Bearing in mind that the original grant conveyed the coal and other mineral, and the first clause of the habendum gave the right to mine and remove coal and other mineral, the second clause granting the right to conduct mining operations under the surface contemplates the right to prospect and explore for coal and minerals under the surface regardless of whether the exploration is successful. In other words, if a coal shaft is sunk and no coal is found, or if an oil well is drilled and no oil is found, the grantee does not become a trespasser *ab initio* because of the failure of his venture. This second right granted in the deed is not, therefore, in derogation of the grant

of minerals or access thereto as previously made in the deed, but is in aid of the original grant." This justification fails to carry conviction.

Under these circumstances, the relevant background facts become important. Count 5 alleges a practice on the part of the defendant by which a different form of deed was used when the right to use the surface of the land was sought to be acquired, from that which was used when only sub-surface rights were involved. This pattern, if established, would tend to show that by the deeds here involved the defendant intended to acquire only sub-surface rights to such minerals as might be found only at coal depth. It alleges a local custom and understanding of the words "coal or other mineral" which, if established by the evidence, would be relevant in the interpretation of the deed. It alleges the modification of the printed form to express specifically the intention of the parties. It also alleges the meaning that this defendant, by its agent, attributed to the phrase "or other minerals" to be used in one of the deeds here involved. And that interpretation, which positively refutes any intention to acquire oil or gas, was communicated to the grantor in response to her inquiry as to the meaning of the phrase. In our opinion these allegations are sufficient to require an answer.

From what has been said it follows that the decree of the circuit court of Bond County must be reversed and the cause remanded, with directions to overrule the motion to dismiss, and for further proceedings consistent with this opinion.

*Reversed and remanded, with directions.*

Mr. JUSTICE HOUSE, with whom Mr. JUSTICE KLING-BIEL joins, concurring in the result:

The facts in this case are correctly summarized in the majority opinion. They are drawn mostly from count 5, but generally cover the allegations of the whole complaint. While I agree that the cause should be reversed and re-

manded, the language of the majority opinion tends to confuse established principles of real estate law.

The complaint specifically prays for a construction of the deeds to exclude a conveyance of the oil and gas. However, the allegations thereof do state a cause of action for deed reformation and plaintiffs have alternatively prayed for that relief. For the reasons hereinafter given, the reformation remedy is available to plaintiffs but not construction of the deeds.

We have long followed the universally accepted doctrine that where the language used in a deed has a settled legal meaning, the intention of the parties must be gathered from the instrument itself and extrinsic evidence is not admissible to aid in its construction. *Fowler* v. *Black,* 136 Ill. 363; *Wilson* v. *Wilson,* 268 Ill. 270; *Roberts* v. *Dazey,* 284 Ill. 241; *Keen* v. *Cleveland, Cincinnati, Chicago & St. Louis Railway Co.* 392 Ill. 362.

In a series of Illinois decisions in the early 1940's, it was held, as in the majority of other jurisdictions, that a conveyance of "all coal and other mineral" has a settled legal meaning and does include oil and gas, with incidental exploration, development and production rights. *Shell Oil Co.* v. *Moore,* 382 Ill. 556; *Jilek* v. *Chicago, Wilmington & Franklin Coal Co.* 382 Ill. 241; *Walter* v. *Sohio Petroleum Co.* 402 Ill. 33; *Shell Oil Co.* v. *Dye,* 135 F.2d 365; *Adkins* v. *Adams,* 152 F.2d 489.

Likewise, the habendum clause reading: "Together with the right to mine and remove said coal and other mineral and the right to conduct mining operations under the surface of said tract of land therefor, and the right to use all rooms, entries and mining ways at coal depth under the surface of said tract of land as and for mining ways, to and from beds of coal and other mineral in other lands," has been construed to merely enumerate other and incidental mining rights, and does not derogate from, but enlarges the expressed and implied rights included in and by the grant-

ing clause. *Shell Oil Co.* v. *Moore*, 382 Ill. 556; *Jilek* v. *Chicago, Wilmington & Franklin Coal Co*. 382 Ill. 241; *Shell Oil Co.* v. *Dye*, 135 F.2d 365.

The deeds before us, by settled judicial construction, are thus clear and unambiguous, and may not be construed by resort to the extrinsic circumstances alleged by plaintiffs. Such circumstances may, however, be material to plaintiffs' prayer for reformation of the deeds.

In this connection, with respect to one of the deeds here involved, the complaint alleges that the defendant, by its agent, stated in a separate written instrument executed and delivered shortly prior to the execution and delivery of the deed the following: "In response to your inquiry regarding the phrase 'other minerals' it is my intention to buy only the coal and such other minerals as may be mined with coal at coal depth." This statement is clear and seems to refute any intention to acquire title to the oil and gas, but its proof would require extrinsic evidence which is not permitted in construing an unambiguous deed.

The complaint alleges representations by the company's agents to Kate B. Nance and Nancy A. Brown and to other land owners in the vicinity that the company desired to obtain only the ownership of the coal underlying the lands and the right to mine and remove it therefrom by means of underground passageways and that the deeds were made as a result of such solicitations and representations of the defendant's agents. This amounts to an allegation of an oral agreement to execute deeds excluding a conveyance of the oil and gas, and these allegations, if proved, would show that through mistake or fraud, the deeds failed to express the agreement of the parties.

The complaint also alleges a practice on the part of the defendant by which a different form of deed was used when the right to use the surface of the land was sought to be acquired from that which was used when only sub-surface rights were involved. It further alleges a local

custom and understanding of the words "coal and other mineral." Evidence on these questions is inadmissible if offered in support of construction of the deeds.

It is not within the province of this court to disturb long established rules of real-property law. The people and bar of this State are entitled to place reliance upon our decisions with assurance that they will not be overruled from term to term. (*Chicago Title & Trust Co.* v. *Shellaberger,* 399 Ill. 320, 343.) To disturb the foregoing holdings at this late date would result in injury to rights of third persons who have acquired interests in oil and gas for valuable considerations in good faith and in reliance upon our earlier decisions.

Mr. JUSTICE BRISTOW, with whom Mr. JUSTICE DAILY joins, also concurring in the result:

I concur with the reversal and remandment of the circuit court decree with directions to overrule the motion to dismiss.

The circumstances alleged in counts 3 and 4 of the complaint and as set forth in the majority opinion, if true, show that the plaintiff is entitled to equitable relief by way of reformation because the deeds in question fail to express the agreement of the parties either through mistake or fraud. Even if the allegations in such counts are technically defective, yet the general prayer for relief and the holding of this court in *Pope* v. *Speiser,* 7 Ill.2d 231, would require the same result. In the latter case we held where the allegations of a complaint and the proof support equitable relief the Civil Practice Act authorizes the granting of such equitable relief although not specifically prayed, provided the court protects the adverse party against prejudice by reason of surprise.

Counts 1, 2, and 5 of the complaint also pray for relief by way of construction of the deeds in the light of extraneous matter alleged. I do not believe that this court intends to hold that relief by way of deed construction is available

in this case, and concurrence in the end result should in no wise be construed as an abandonment of certain fundamental principles of the substantive law of Illinois.

These principles and decisions have established that where the language of a deed has a settled legal meaning the instrument itself is the only criterion of the intention of the parties and extrinsic evidence is not admissible to aid in its construction; (*Wilson* v. *Wilson*, 268 Ill. 270; *Keen* v. *Cleveland, Cincinnati, Chicago & St. Louis Railway Co.* 392 Ill. 362;) that a conveyance of "all coal and other mineral" has a settled legal meaning and does include oil and gas, with incidental exploration, development and production rights (*Shell Oil Co.* v. *Moore*, 382 Ill. 556; *Jilek* v. *Chicago, Wilmington & Franklin Coal Co.* 382 Ill. 241; *Walter* v. *Sohio Petroleum Co.* 402 Ill. 33; *Shell Oil Co.* v. *Dye*, 135 F.2d 365) ; that the enumeration of other and incidental mining rights in the habendum clause of a conveyance of "all coal and other mineral" does not derogate from, but enlarges the express and implied rights included in the granting clause. *Shell Oil Co.* v. *Moore*, 382 Ill. 556; *Shell Oil Co.* v. *Dye*, 135 F.2d 365.

It is observed that the defendant herein (through an agent) is the original grantee in the deeds in question. The rights of third parties, who would be without notice of the extrinsic circumstances alleged, have not intervened, and none are involved. It is my opinion that this defendant, being the original grantee, should be required to answer the complaint and the trial court should consider extrinsic evidence only insofar as reformation of the deeds is sought

Since the rights of third persons are not under attack in the instant case, the court's opinion should in no wise be construed to affect the rights of third persons who may have acquired interests in oil and gas for valuable considerations in good faith under "coal and other mineral" deeds similar to the deeds here involved.